**CHAPPELL HILL BANK, Appellant,**

v.

**Lillian SMITH, Appellee.**

No. 14–07–00099–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 8, 2008.

John V. Elick, Bellville, David A. Carp, Houston, for appellant.

Steven C. Haley, Brenham, for appellee.

Panel consists of Chief Justice HEDGES and Justices BROWN and BOYCE.

## OPINION

JEFF BROWN, Justice.

Chappell Hill Bank appeals the trial court's summary judgment in favor of Lillian Smith as well as the court's denial of the bank's summary-judgment motion. The bank and Smith each own property facing Main Street in the same block in the town of Chappell Hill. In the action below, the bank sought (1) a declaratory judgment stating that a certain strip of land running behind its, Smith's, and other owners' properties is a public alley; (2) a

mandatory injunction ordering Smith to remove any and all obstructions from the alley; (3) a prohibitive injunction enjoining Smith from obstructing the alley in the future; and (4) recovery of its attorney's fees. We affirm the trial court's judgment against the bank, including the attorney's fee award to Smith.

## UNDERLYING FACTS AND PROCEDURAL HISTORY

Jacob and Mary Haller originally platted the town of Chappell Hill in the year 1849 (or thereabouts). The Hallers designed the town with blocks of lots bounded by streets running east-west and north-south. Some blocks included 20–foot alleys running north-south between the rows of east-facing and west-facing lots. The Haller map was not recorded in the real-property records of Washington County, but most if not all of the deeds involving Chappell Hill property have referred to the map since the mid–1800's.

Block 1 in Chappell Hill contains 16 lots each having a dimension of 40 feet by 100 feet. The block is bounded on its north side by Chestnut Street (also known both as FM 2447 and "the Brenham Road"), on its east side by Main Street (also known as FM 1155), on its south side by Cedar Street, and on its west side by Sycamore Street. The original Haller map depicts a 20–foot alley in Block 1, running north from Cedar Street to Chestnut Street, between Lots 1 through 8 that face Main Street and Lots 9 through 16 that face Sycamore Street.

Appellee Lillian Smith owns Lots 1, 2, 9, 10, and the north halves of Lots 3 and 11 in Block 1. She thus owns the north two and one-half lots on both the west (facing Sycamore Street) and east (facing Main Street) sides of Block 1. Her home, which her aunt Mildred Shaver built in 1959, sits on this property. Part of the home stands in the strip of land which the Haller map shows as the alley for Block 1. A cyclone fence, also erected in 1959, partially encloses Smith's yard and crosses and blocks the originally platted alley at the southern edge of her property.

Appellant Chappell Hill Bank owns Lots 7 and 8 in Block 1. These lots face Main Street, with Lot 8 being at the corner of Main and Cedar Streets. The Farmers' State Bank of Chappell Hill, predecessor in title and interest to Chappell Hill Bank, purchased Lot 7 in 1907. The bank purchased Lot 8 in its own name in 1993.

In 2005, the bank brought this action against Smith. In its original petition for declaratory and injunctive relief, the bank sought to open the alley to allow "the free and unimpeded passage of the public using such alley," and, more specifically, to allow "its customers to perform their banking business by having a customers [sic] drive-up window."

After answering the bank's complaint and filing a third-party petition to join all other Block 1 property owners in the bank's lawsuit, Smith filed her motion for summary judgment. She alleged that she was entitled to judgment as a matter of law because under the undisputed facts, (1) the alley had been abandoned under the common law or pursuant to statute, (2) the owners of all lots within Block 1 had executed a quitclaim deed on April 1, 1959, relinquishing all rights to the alley insofar as it abutted the property now owned by Smith, and (3) the bank is estopped to assert any claim for use of the alley insofar as it abuts Smith's property. She also prayed for recovery of reasonable and necessary attorney's fees incurred in defending against the bank's claims.

The bank objected to portions of affidavit testimony offered in support of Smith's motion for summary judgment. In addi-

tion, the bank filed its own motion for partial summary judgment. In that motion, the bank argued that undisputed evidence shows (1) the alley in Block 1 was dedicated to the public and to abutting landowners in 1849, (2) the alley has not been abandoned under common law or by statute, (3) the 1959 quitclaim deed does not pertain to the alley involved in this lawsuit, and (4) Smith expressly recognized and conveyed rights relating to the alley in several property transfers occurring after 1959.

After holding two hearings on the parties' respective motions, the trial court granted Smith's and denied the bank's. The trial court also issued an order sustaining a number of the bank's objections to Smith's summary-judgment evidence and overruling the remainder of the objections. On January 30, 2007, the court entered its final judgment that the bank take nothing by its claims against Smith but that Smith have judgment against the bank for $10,100.00 in attorney's fees. From this judgment, the bank appeals.

### STANDARD OF REVIEW

The Texas Supreme Court has summarized the role of a court of appeals when reviewing a judgment rendered on competing motions for summary judgment. In *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868 (Tex.2000), the Court stated:

> When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. *See Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). The reviewing court should render the judgment that the trial court should

have rendered. *See Agan*, 940 S.W.2d at 81; *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex. 1984).

*FM Properties*, 22 S.W.3d at 872–73. Where a trial court does not specify the basis on which summary judgment is granted, the appealing party must show that it is error to base it on any ground asserted in the motion. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1996).

In determining whether there is a disputed material-fact issue precluding summary judgment, we must accept as true all evidence supporting the non-movant. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). We must also indulge all inferences from the evidence and resolve all doubts in favor of the non-movant. *Id.* Because the propriety of a summary judgment is a question of law, we perform a *de novo* review. *Nardini v. Continental Airlines, Inc.*, 60 S.W.3d 197, 200 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994)).

Rulings on the admission or exclusion of evidence rest within the sound discretion of the trial court. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). This court will not reverse unless it is shown that the trial court did in fact commit an abuse of discretion and that the erroneous evidentiary ruling probably caused the rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 274 (Tex. App.-Houston [14th Dist.] 1999, no pet.); *see also* Tex.R.App. P. 44.1.

The decision whether to grant attorney's fees and costs under the Texas Uniform Declaratory Judgment Act also rests within a trial court's sound discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). We will therefore reverse the trial court's grant of fees only upon the showing of a clear abuse of discretion. *Id.* A trial court abuses its discretion if it clearly fails to correctly analyze or apply the law, *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005) (orig.proceeding), or acts arbitrarily and without regard to guiding rules or principles. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding).

### ANALYSIS

The conveyance of land by reference to a map or plat showing abutting roads or streets results in the purchaser's acquiring a private easement in the roads or streets shown on the plat. *Dykes v. City of Houston*, 406 S.W.2d 176, 181 (Tex. 1966). The bank contends, and Smith does not dispute, that the two deeds by which the bank acquired Lots 7 (in 1907) and 8 (in 1993) both refer to the Haller map.[1] Thus, the bank concludes, it holds a private easement in the land designated as an alley on that map. Smith admits her house and fence obstruct the alley.

### Estoppel By Deed

The summary-judgment record contains a document dated April 1, 1959, and entitled Quitclaim Deed: Sadie R. Schaer, et al to Mildred Shaver. The quitclaim deed provides:

The State of Texas

County of Washington

WHEREAS, many years ago, an alley 20 feet in width was designated running from Pecan Street on the South north to the Brenham [R]oad, said alley running parallel with Main Street, and,

WHEREAS, at the time of the construction of the highway some 25 or more years ago, said highway being along what is known as Brenham [R]oad, an embankment was made at the north end of this alley, and said alley abandoned for all intents and purposes as such for a distance of 120.48 feet south of the Brenham [R]oad to the northwest corner of the property presently owned by J. Knight, and, whereas the strip formerly used as an alley for this distance of 120.48 feet has been used since that time by W. Reinstein and his hears, and,

---

1. In the 1907 deed, the property sold to The Farmers' State Bank of Chappell Hill is described as "that certain tract or parcel of land known as Lot No. 7 in the town of Chappell Hill Texas fronting on Main Street and situated on the West side of said Street with metes and bounds as follows: Commencing at the N.E. corner of the brick store house owned and occupied at the present time by Wm. Rheinstein[, t]hence in a Northerly direction on a continuation of the East line of the outer wall of Rheinsteins store along said Main Street 40 feet to corner[, t]hence in a Westerly direction parallel with the North brick wall of Rheinstein store 100 feet to an alley[, t]hence South parallel with Main Street 40 ft to corner of Rheinstein's lot[, t]hence in a Easterly direction with North line of Rheinsteins lot and store to the place of beginning[.]" (Variations in possessive punctuation of "Rheinstein" exist in original deed.) The 1993 deed contains this description: "All that certain tract or parcel of land, lying and being situated in the Town of Chappell Hill, Washington County, Texas, part of the Wm. Munson Survey, A–90, being Lot 8 of the Town of Chappell Hill, Texas, and being more fully described by metes and bounds on Exhibit 'A' attached hereto." The description contained in Exhibit 'A' is similar to the description quoted above from the 1907 deed and makes specific reference to "the north margin of Cedar Street at its intersection with the east line of a 20 foot alley for the southwest corner hereof and of said Lot 8."

WHEREAS, the undersigned, being all of the property owners in said block, do wish at this time, to acknowledge the fact of abandonment of said alley for the distance of 120.48 feet as heretofore described,

NOW THEREFORE KNOW ALL MEN BY THESE PRESENTS:

We, the undersigned, being all of the adjoining property owners for and in consideration of the sum of One and No/100 ($1.00) Dollars to us in hand paid by Mildred R. Shaver of the County of Washington, State of Texas, the receipt of which is hereby acknowledged, do by these presents relinquish, release, and forever quitclaim our right of user of said alley for a distance of 120.48 feet from the northwest corner of the Joe Knight property to the Brenham [R]oad unto the said Mildred R. Shaver, her heirs and assigns forever, so that neither we, the said adjoining property owners or our heirs, nor any person or persons claiming under us shall, at any time hereafter, have claim or demand any right or title to the aforesaid right of user to said alley for the distance prescribed.

Witness our hands this the 1st day of April, A.D., 1959.

Following these quoted provisions are the signatures of Sadie R. Schaer, Harry Lesser, Faye Lesser, and Robert Schaer in his capacity as president of Farmers State Bank.[2] These signatures are notarized.

■ Smith contends the bank is estopped by virtue of its execution of the quitclaim deed to assert a private easement in the north 120.48 feet of the alley.[3] Under the theory of estoppel by deed, the grantor of an estate in land is estopped to assert an interest in or against the estate the deed purports to convey. *See generally Duhig v. Peavy–Moore Lumber Co., Inc.*, 135 Tex. 503, 144 S.W.2d 878 (Tex. 1940); *Gutierrez v. Rodriguez*, 30 S.W.3d 558 (Tex.App.-Texarkana 2000, no pet.).

The bank disputes on two grounds Smith's right to judgment on her defense of estoppel by deed. First, the bank argues the quitclaim deed cannot affect its assertion of rights in the alley of Block 1 because the quitclaim deed pertains to "an alley . . . running from *Pecan* Street on the South north to the Brenham [R]oad." The alley at issue in this litigation runs north through Block 1 from *Cedar* Street to the Brenham Road. According to the bank, there is no evidence in the record that it relinquished rights in the Block 1 alley.

The granting clause of the quitclaim deed expresses the signatories' intent to release, quitclaim, and relinquish, in favor of Mildred Shaver, all right in and to a 120.48–foot portion of an alley running from the northwest corner of property owned by Joe Knight north to the Brenham Road. While this granting clause does not specifically identify, by metes and bounds, the property in which interests are relinquished, the description provides enough information so that a party familiar with the locality can identify the prem-

---

2. The landowner identified as Joe Knight did not sign the quitclaim deed. However, in October of 2003, John Philip Lesser, as successor in interest to Joe Knight, ratified and joined in the quitclaim deed. In the ratification, John Philip Lesser quitclaimed all interest in the property subject to the quitclaim deed and stated that his agreement shall bind his heirs, successors, and assigns.

3. There is no dispute that the encroachments of which the bank complains are within the northern 120.48 feet of the alley, between the eastern and western lots owned by Smith in Block 1.

ises with reasonable certainty. *See Gates v. Asher,* 154 Tex. 538, 541, 280 S.W.2d 247, 248–49 (Tex.1955).

In *Gates,* a warranty deed contained this description of land to be conveyed: "All of Lots Number ten (10), Eleven (11) and Twelve (12) in Block One Hundred Seventy-five (175), in Denver Resurvey No. 2...." In the grantee's suit, apparently brought to compel performance of the conveyance, the grantor's heirs claimed the deed was invalid because there was no "Denver Resurvey No. 2." There was a Denver Resurvey, which was a replat of a portion of the original subdivision, but the grantor owned no property in the block designated therein as Block 175. The Denver Resurvey, however, depicted a Block No. 2 which was also designated on the Denver Resurvey as "org. (original) 175."

The trial court entered judgment on a jury's verdict in the grantee's favor, but the court of appeals reversed. The court of appeals held that the description of the property to be conveyed was fatally defective, making the deed invalid, and rendered judgment for the grantor's heirs. The Supreme Court of Texas reversed the court of appeals and affirmed the trial court's judgment. The Court concluded that the property description, which was not defective on its face, afforded "a clue or key so that the land may be identified with reasonable certainty." *Gates,* 280 S.W.2d at 248. Discussing the "clue or key," the Court stated:

Upon examination of the records it is disclosed that there is no Denver Resurvey No. 2. Looking at the plat of Denver Resurvey the searcher finds a block designated "2" and the same block designated as "org. 175". The figure "2" in the description must have been inserted for some purposes. It cannot refer to the lots because they are designated as 10, 11 and 12. It cannot refer to the survey because there is only one Denver Resurvey. It would require no strained deduction to assume, therefore, that the "No. 2" designates the block and particularly is this so when the plat reveals a block designated as "2" and also as "org. 175".

*Id.* at 249. The Court refused to disturb the jury's finding that the property description was sufficient to enable a party familiar with the locality to identify the particular land with reasonable certainty to the exclusion of any and all other tracts. *Id.*

In this case, Smith produced real-property records establishing Joe Knight's, Mildred Shaver's, Sadie Schaer's, Harry Lesser's, Faye Lesser's, and Farmers State Bank's ownership of the lots in Block 1 of Chappell Hill, Washington County, in 1959. There is no proof or even a suggestion in the record that in 1959 these identified persons and entity all owned property in some other specific tract of land in Washington County. Smith testified by affidavit that she knows of no Pecan Street in Chappell Hill; the bank tendered no proof of any other alley to which the quitclaim deed could apply.[4]

---

**4.** The reference in the quitclaim deed to the alley running from Pecan Street north to the Brenham Road is contained in a recital rather than a decretal paragraph. Smith cites *Alford v. Krum,* 671 S.W.2d 870, 872 (Tex.1984), for the proposition that when there is a conflict between clauses in a deed that are not of equal dignity, the granting clause as the key expression of intent prevails over any other

provision. The Supreme Court overruled *Alford* in *Luckel v. White,* 819 S.W.2d 459, 464 (Tex.1991). Both *Alford* and *Luckel* involved the conveyance of fractional interests in mineral estates. The earlier case pronounced a rule that the granting clause of a conveyance will prevail over irreconcilable conflicts in other causes; the later case avoided conflict by harmonizing the various clauses. (In his

Here, because the bank has not shown the reference to an alley running north from Pecan Street to Chestnut Street to have any meaning whatsoever, there is no irreconcilable conflict between the quitclaim deed's clauses. Indeed, the bank has not alleged that the quitclaim deed is ambiguous. Construction of an unambiguous deed is a question of law for the court. *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986). The intention of the parties is paramount in construing a deed. *Id.*

For summary-judgment proof, both Smith and the bank relied on the Haller map, which depicts an alley running north through Block 1 from Cedar Street to the Brenham Road (then known as Chestnut Street). We conclude there is no issue of fact concerning the property the bank and other landowners in Block 1 intended to relinquish and quitclaim in 1959 to Mildred Shaver. They intended to relinquish and quitclaim any interest each or any of them had to the 120.48–foot portion of the alley abutting Mildred Shaver's property at the north end of Block 1 along the Brenham Road. Reference in the quitclaim deed to Pecan Street is not a sufficient basis on which to withhold the estoppel effect of the quitclaim deed against the bank.

The bank asserts a second basis for disputing that it is estopped to enforce its easement against Smith. In 1993, the bank purchased Lot 8 from Smith and her co-owners and the deed to the property refers to the alley. Because the reference to the alley does not except or exclude the northern 120.48 feet, the bank contends it acquired a private easement in the Block 1 alley. In its briefing, the bank characterizes the 1993 deed as a rededication or ratification of the bank's rights in the alley, which rights nullify any effect the quitclaim deed may otherwise have had on the bank's rights as they existed before the quitclaim deed was executed.

The bank cites no authority for this proposition, other than the general principle that a conveyance of real property by reference to a map showing abutting roads results in the purchaser's taking the property with a private easement in those roads. *See, e.g., Dykes,* 406 S.W.2d at 181. Our review of the law reveals no cases addressing the effect a purchaser's prior relinquishment of rights in the shown roads may have on application of the general rule.

Under the facts presented here, we are unwilling to hold that reference to the alley in the 1993 deed of Lot 8 constitutes, as a matter of law, a dedication to the bank of an easement in the entire alley. The bank purchased Lot 8 in 1993 after having expressly relinquished its right as an abutting landowner to use the northern 120.48 feet of the alley *and* knowing that the alley had been obstructed at its north end since 1959.[5] We conclude as a matter of law that the bank did not acquire under the 1993 deed a private easement in the entire alley.

Finally, the bank claimed to have the right as a member of the public to see the streets and alleys of Chappell Hill open for

dissent in *Luckel,* Chief Justice Phillips noted the irony of the Court's choosing to overrule *Alford* when it avoided finding the very fact on which *Alford* was based—an irreconcilable conflict between clauses in the same deed.)

5. Under this circumstance in particular, the equities are not with the bank. *See, e.g., Premium Oil Co. v. Cedar City,* 112 Utah 324, 331–32, 187 P.2d 199, 204 (1947) (refusing to sustain purchaser's demand that platted street be opened, where purchaser had leased other land abutting street for eight years and knew at the time of purchase that street could not be used as platted without destroying permanent improvements).

public use, separate and apart from its right as an abutting landowner to a private easement in the alley. *See Adams v. Rowles,* 149 Tex. 52, 56, 228 S.W.2d 849, 851 (Tex.1950) (holding that conveyance of lots according to a plat or plan of a town implies to the purchasers "that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public"). Even if the quitclaim deed were to preclude the bank from asserting its private rights as the owner of land abutting the alley, the bank contends it is entitled to judgment as a matter of law on its assertion against Smith of the public's rights in the alley.[6]

## Abandonment

Smith moved for summary judgment on the basis that the alley, or at least the northern 120.48–foot portion of the alley, has been abandoned and is as a matter of law no longer subject to the public's rights. In support of her motion, Smith argued that undisputed facts in the record establish both common law and statutory abandonment of the alley. Because we agree that Smith has established as a matter of law that the alley has been abandoned pursuant to statute, we do not reach the issue of common-law abandonment.

Section 251.057 of the Texas Transportation Code provides:

(a) A county road is abandoned when its use has become so infrequent that one or more adjoining property owners have enclosed the road with a fence continuously for at least 20 years. The abandoned road may be reestablished as a public road only in the manner provided for establishing a new road.

(b) This section does not apply to:

(1) a road to a cemetery; or

(2) an access road that is reasonably necessary to reach adjoining real property.

Tex. Trans. Code Ann. § 251.057 (Vernon 1999). Smith has presented evidence that the alley (1) has been partially enclosed by fence for at least 20 years; (2) is not a road to a cemetery; and (3) is not an access road that is reasonably necessary to reach adjoining property. The bank does not dispute or controvert this evidence.

The bank contends, however, that the statute is inapplicable in this case because the alley is not a "county road." We disagree. Under Section 251.051 of the Transportation Code, the commissioners court of a county "shall assume control of streets and alleys in a municipality that does not have an active de facto municipal

---

**6.** In her brief, Smith argues, "While estoppel is not applied as freely against a public way, as it is in the case of private easements, nevertheless, cases do arise of such character that justice requires the application of estoppel even against the public." Indeed, estoppel has been applied in certain cases when the public's rights were not asserted for a significant period of time in the face of an obvious obstruction. *See, e.g., Krause v. City of El Paso,* 101 Tex. 211, 217–18, 106 S.W. 121, 123 (1907) (holding city was estopped to assert rights enforcement of which would require homeowner to remove house that for 20 years encroached on dedicated but unopened city street); *Sutor v. International & G.N.R. Co.,* 59 Tex.Civ.App. 73, 76–77, 125 S.W. 943,

945 (Austin 1910, writ ref'd) (holding city was estopped to seek destruction of building blocking access to claimed public easement over private property, where construction of building was openly visible yet city waited ten years from construction to assert purported easement). Smith pleaded estoppel as a defense to the bank's claims, but did not assert equitable estoppel—as opposed to estoppel by deed—as a basis for summary judgment. We are restricted to reviewing the summary-judgment evidence in light of the grounds asserted in the parties' motions. Thus, in spite of Smith's briefing, we do not address Smith's estoppel defense to the bank's assertion of the public's rights in the alley.

government." *Id.* § 251.051(1)(2). While the bank argued in response to Smith's motion for summary judgment, and in its own motion, that "Chappell Hill is a historic vibrant town . . . in continuous existence as a town since 1849," the bank does not contend that Chappell Hill has "an active de facto municipal government." In fact, the bank submitted with its response historical information indicating that (1) the town of Chappell Hill was incorporated in 1856, (2) mayor-council government ended in 1884, and (3) voters rejected reincorporation of the town in 1984. *See* Handbook of Texas Online, Chappell Hill, http://www.tshaonline.org/handbook/online/articles/CC/hlc21.html (accessed April 2, 2008).

Even if Chappell Hill has had no active municipal government for many years, the bank contends the alley is not a county road because Smith presented no proof the commissioners court actually did assume control over the alley. According to the bank, Section 251.051 is not "self-executing," and a county must somehow expressly undertake or accept the control contemplated by the statute. Smith argues that control over municipal streets and alleys simply defaults to the county when there is no active de facto municipal government. Under her view, pursuant to Section 251.051, the undisputed long-standing nonexistence of Chappell Hill's municipal government results in the alley's being a county road for purposes of Section 251.057. The parties cite no authority, and we find none, supporting or refuting either party's reading of Section 251.051.[7]

We conclude Section 251.051 gives a county de jure control over the streets and alleys of a non-functioning municipality. It is not material whether the county affirmatively exercises control by maintaining the streets and alleys or otherwise asserting powers over them, or whether the county even acknowledges its de jure control. Under Section 251.051, where a municipality does not have an active de facto municipal government, the streets and alleys are county roads. The alley in Block 1 of Chappell Hill is a county road.

As a county road, the alley can be abandoned under Section 251.057. Undisputed evidence in the record establishes that the criteria for statutory abandonment are satisfied. A portion of the alley has been enclosed with a fence continuously for at least 20 years (in this case, almost 50 years), the alley is not a road to a cemetery, and the alley is not an access road reasonably necessary to reach adjoining property. *See* Tex. Trans. Code Ann. § 251.057(a)(2).

At oral argument, the bank stated that by holding the alley has been abandoned, this court would of necessity hold that all streets and alleys of Chappell Hill have been abandoned. The bank's authority for this proposition is *Griffith v. Allison*, 128 Tex. 86, 96 S.W.2d 74, 77–78 (1936). The bank misconstrues the Supreme Court's opinion. First, *Griffith v. Allison* involved common-law abandonment and is not instructive to our analysis of whether the alley has been abandoned under the terms of Section 251.057. Second, in *Allison*, the Court refused to uphold purport-

---

7. The bank emphasizes that Smith herself presented affidavit testimony from the county judge and a county commissioner that the "County of Washington has never assumed control over this alley or any alley in the town of Chappell Hill under the provisions of TEX. TRANS. CODE ANN. § 251.051." We do not agree with the bank that this testimony proves as a matter of law the alley is not a county road. Testimony from county officials that the county did not expressly assume control over the alley does not answer the question whether the statute requires express assumption of control for the alley legally to be a county road.

ed rights in a public park when the entire proposed town, of which the park was to be a part, had failed to materialize. The bank is wrong to characterize the opinion as holding that abandonment of one street or road of a dedicated city results in the abandonment of the remainder of the dedicated streets, roads, and public lands.

Pursuant to Section 251.057, Washington County has abandoned the portion of the alley abutting Smith's property that has been enclosed by fence for more than 20 years. As a matter of law, the property is thus not subject to being opened for public use. We need not and do not address whether any other portion of any other road or alley in Chappell Hill has been abandoned.

### Evidentiary Rulings

The bank complains on appeal that the trial court erred in failing to grant a number of its objections to Smith's summary-judgment evidence. The pieces of evidence as to which the bank claims its objections were erroneously overruled are (1) Lillian Smith's affidavit testimony (a) that her aunt relied on the 1959 quitclaim deed in constructing her house within the confines of the alley, (b) discussing the purposes, intent, or effect of the quitclaim deed, and (c) that officials from Washington County represented to her that the county does not intend to open the alley as a public thoroughfare; and (2) the county judge's and a county commissioner's affidavit testimony that (a) the alley has been abandoned for public use for at least 50 years, and (b) they consider the alley abandoned under Section 251.057. Because we affirm the summary judgment on the strength of undisputed evidence in the record to which the bank did not object, however, there is no harm even if the trial court's rulings constitute an abuse of discretion. Consequently, we do not address

the propriety of the bank's objections or the trial court's failure to sustain them.

### Attorney's Fees

In its final point of error, the bank contends the trial court erred in awarding attorney's fees to Smith. The Texas Uniform Declaratory Judgment Act provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997).

■ Contrary to the bank's argument, this provision supports an award to either side in a declaratory-judgment action. *See, e.g., Arthur M. Deck & Associates v. Crispin*, 888 S.W.2d 56, 62 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (affirming award of attorney's fees to defendant in declaratory-judgment action). Proper pleading and proof support the trial court's award of $10,100.00 in attorney's fees to Smith. We affirm the award as a proper exercise of the trial court's discretion.

### CONCLUSION

Undisputed evidence establishes as a matter of law that the bank is entitled to assert against Smith neither a private right of easement nor the public's right of use in the portion of the alley abutting her property in Block 1 of Chappell Hill, Texas. The trial court thus did not err in granting Smith's motion for summary judgment or denying the bank's motion. Because the objections the bank claims the trial court erroneously overruled do not involve the evidence on which the trial court's judgment is properly based, any such error did not result in the rendition of an improper judgment. Therefore, we do not address these rulings. Finally, the trial court's award of attorney's fees to

Smith was not an abuse of discretion. We affirm the trial court's judgment.