Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-09-00486-CV

Jason **BRAUN** and Mary Scopas Braun,
Appellants

v.

Richard **BRAUN** and Mary Braun,
Appellees

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 08-0149-CV
Honorable Dwight E. Peschel, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  June 23, 2010

REVERSED AND REMANDED

This is an appeal from a trial court's order granting summary judgment in favor of appellees Richard Braun and Mary Braun ("Richard and Mary"), and declaring: (1) Public Road 50' Roadway ("Public Road 50") is not a public road, and (2) the appellants Jason Braun and Mary Scopas Braun ("Jason and Scopas") do not have a right to use the road. We reverse the trial court's judgment, and we remand the case to the trial court for further proceedings.

**FACTUAL BACKGROUND**

Public Road 50 abuts multiple lots in the Hidden Farms Subdivision ("the subdivision"). In 1971, the developer of the subdivision, Richard L. Burdick, filed a plat for the subdivision in the Guadalupe County land records. It is undisputed that the plat's description contains an express dedication of a fifty foot roadway to the public that identifies the roadway as a public road; this fifty foot roadway constitutes Public Road 50, pictured below and labeled as Public Road 50' R.O.W.



In 1981, Udo and Lucille Koehler ("the Koehlers") owned lots 9, 10, 11, 13, and 14, each pictured above. In 1989, the Koehlers also acquired the southern half of lot 3. As pictured

above, each of these lots abutted Public Road 50. To reach lots 9, 10, 11, 13, and 14, the Koehlers would travel along Existing County Road 50, and turn right onto Public Road 50. From that point, the Koehlers would travel along Public Road 50 located between lots 2 and 3. They would continue traveling along this straight portion of Public Road 50 until they reached their private locked gate, located at the corners of lots 2, 3, 9, and 13, where Public Road 50 begins to angle.

After entering the gate, the Koehlers would continue traveling along the angled portion of Public Road 50, which ran between lots 9, 10, 11, and 13 until the road ended in a cul-de-sac. These lots as well as this angled portion of Public Road 50 were completely enclosed by perimeter fencing. Entry through the Koehler's private locked gate was the only means to access lots 9, 10, 11, and 13 and the angled portion of Public Road 50. The Koehlers had installed the fencing to secure cattle they raised on their property. It is undisputed that no one objected to the Koehlers' enclosure of this portion of Public Road 50 or demanded a right of access to the roadway beyond the Koehlers' private locked gate. Additionally, at that time, Public Road 50 was in its natural earthen state.

After a series of conveyances, Richard and Mary acquired all of the properties owned by the Koehlers by 2003. Richard and Mary had also acquired lot 12 by this time. All of the acquired lots abut Public Road 50. After Richard and Mary acquired the properties, the private locked gate and the perimeter fencing that had surrounded several of the lots were removed. Although it is disputed who participated in the removal of the fence and gate, it is uncontroverted that the fence and gate were removed and never reinstalled. According to Jason and Scopas, the parties agreed Public Road 50 would be used to access all the lots abutting Public Road 50 that Richard owned. Subsequently, Richard and Jason, who are brothers, began operating their

landscaping business on the lots Richard had purchased. Road base was subsequently installed on Public Road 50.

Jason constructed a personal residence on lot 11, one of the lots owned by Richard. According to Jason and Scopas, Richard told Jason he could use Public Road 50 to access lot 11, and Jason relied on this representation before constructing his residence on the lot. Jason took title to lot 11 in 2004. Thereafter, Richard constructed a home on lot 12, the lot neighboring Jason's lot. Construction crews utilized Public Road 50 when constructing both houses.

Utility poles and lines were placed across two of Richard's lots, specifically lots 9 and 10, to provide electricity to Jason's residence on lot 11. A septic system also was installed on Jason's lot; however, the parties contest whether a portion of that system encroaches upon Richard's lot 10. According to Jason and Scopas, Richard verbally authorized the placement of the utility poles, participated in the installation of the septic system, and consented to the addition of road base, all of which were installed for the benefit of Jason's residence. Richard denies these assertions. A dispute subsequently arose regarding whether Jason and Scopas had a right to use Public Road 50.

## PROCEDURAL BACKGROUND

In January of 2008, Jason and Scopas filed suit seeking a declaration that Public Road 50, located along the common boundary of the parties' respective properties, is a public roadway, or, in the alternative, Jason and Scopas have a right to use the roadway based upon the plat's express dedication and Richard's representations. In response, Richard and Mary filed an answer, special exceptions, and a counterclaim. In their answer, Richard and Mary generally denied each allegation asserted in Jason and Scopas's suit, and also asserted the affirmative defenses of non-acceptance and abandonment. In their counterclaim, Richard and Mary alleged encroachments

and requested damages for the replacement cost of the fencing which had been removed and attorney's fees.[1] In response to Richard and Mary's encroachments counterclaim, Jason and Scopas pled the affirmative defenses of estoppel, consent, and waiver.

While the lawsuit was pending, Richard and Mary filed a petition in Commissioner's Court to close, abandon, or vacate Public Road 50, which appears to have been denied given the subsequent proceedings regarding the lawsuit. Neither party disputes the implied denial of this petition.

Additionally, during the pending status of the lawsuit, Burdick conveyed his interest in Public Road 50 to Jason and Scopas, Richard and Mary, and other landowners in February of 2008. The conveyance to each grantee encompassed "that portion of the right of way which abuts their respective lot, lots or unplatted property to the centerline of said right of way."

Thereafter, Richard and Mary filed a motion for summary judgment on their affirmative defenses and counterclaim. The trial court granted the motion for summary judgment and entered a take-nothing judgment against Jason and Scopas. In the order, the trial court made the following declarations: (1) Public Road 50 is not a public road that the public or Jason and Scopas have a right to use or claim in ownership; and (2) the gravel drives, planter area, sprinkler head, septic drain field, and electrical service line installed by Jason and Scopas constitute encroachments. The trial court further ordered Jason and Scopas to remove the encroachments, and awarded Richard and Mary damages for the cost of replacement fencing as well as attorney's fees.

On appeal, Jason and Scopas contend the trial court erred in granting Richard and Mary's motion for summary judgment. Specifically, Jason and Scopas argue the trial court erred in: (1)

---

[1] We note both parties state in their briefs that it is undisputed the fencing, which was originally installed by the Koehlers, was removed and not reinstalled.

declaring Public Road 50 is not a public road because Richard and Mary did not prove as a matter of law their affirmative defenses of (a) non-acceptance, or (b) common law or statutory abandonment; (2) declaring Jason and Scopas have no right to use the roadway because the motion for summary judgment did not negate at least one element of Jason and Scopas's easement causes of action; (3) declaring that certain items constituted encroachments on Richard and Mary's property and ordering the removal of those items when the summary judgment evidence raised genuine issues of material fact regarding consent, and Richard and Mary failed to conclusively show the existence of encroachments; (4) assessing damages against Jason and Scopas for the replacement cost of fencing; and (5) awarding attorney's fees when Richard and Mary failed to request attorney's fees in their motion for summary judgment.

## STANDARD OF REVIEW

We review a trial court's granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a summary judgment motion, the moving party has the burden of showing there is no genuine issue of material fact, and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). In determining whether there is a genuine issue of material fact, we take all the evidence favorable to the nonmovant as true, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence*, 164 S.W.3d at 661; *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). Summary judgment is proper if the movant disproves at least one element of the plaintiff's claims or affirmatively establishes each element of an affirmative defense. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). A defendant moving for summary judgment on an affirmative

defense has the burden of conclusively establishing that defense. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000).

If the trial court's summary judgment order does not state the basis for the trial court's ruling and the movant moves for summary judgment on multiple grounds, the appealing party must negate all possible grounds upon which the order could have been based. *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). To do this, the appealing party may assert a separate issue challenging each possible ground, or assert a general issue that the trial court erred in granting summary judgment and within that issue provide argument negating all possible grounds upon which summary judgment could have been granted. *Id.* We will uphold the trial court's judgment if any of the grounds in the summary judgment motion can be sustained. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999); *Mowbray v. Avery*, 76 S.W.3d 663, 667 (Tex. App.—Corpus Christi 2002, pet. denied).

### DISCUSSION

### *Easements*

Because it is central to our disposition, we begin our discussion with Jason and Scopas's private easement argument. In this issue, Jason and Scopas contend the trial court erred in granting Richard and Mary's motion for summary judgment and declaring that Jason and Scopas did not have a right to use or claim in ownership of any estate or interest in Public Road 50. Jason and Scopas specifically contend they have a private easement to use Public Road 50 because the conveyance of lot 11 to them made reference to the recorded subdivision plat that showed the abutting Public Road 50.

In response, Richard and Mary contend Jason and Scopas waived their private easement claim because they did not specifically raise it in their original petition. According to Richard

and Mary, Jason and Scopas first raised their private easement claim in their response to Richard and Mary's motion of summary judgment. Asserting a new cause of action or defense in a response to a motion for summary judgment is prejudicial on its face and cannot be allowed. *See Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex. 1992). Therefore, according to Richard and Mary, although the private easement claim is a valid cause of action recognized in Texas, it was required to be raised in Jason and Scopas's original petition.

To determine whether Jason and Scopas waived their private easement claim, we must review their original petition. We consider a pleading to be sufficient if it gives, at minimum, notice of the cause of action and facts being alleged so the opposing party can prepare a defense. TEX. R. CIV. PRO. 45(b), 47(a); *McNeil v. Nabors Drilling USA, Inc.*, 36 S.W.3d 248, 250 (Tex. App— Houston [1st Dist.] 2001, no pet.). A cause of action and its elements do not have to be plead with specificity; a pleading is sufficient so long as the cause of action can be reasonably inferred. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *McNeil*, 36 S.W.3d at 250. We liberally construe a petition in favor of the pleader. *Id.*

After liberally construing Jason and Scopas's original petition, we hold the petition was sufficient to raise a private easement claim. *See id.* In their original petition, Jason and Scopas ask for the following declarations:

III.

DEDICATION OF PUBLIC ROADWAY

On March 26, 1971, Richard L. Burdick filed the duly approved plat for The Hidden Valley Farms Subdivision plat in Volume 3, Page 62 of the Map and Plat Records of Guadalupe County, Texas. The subdivision plat expressly "dedicates to the use of the public forever all roads shown hereon."
...

IV.

CREATION OF EXPRESS EASEMENT

Alternatively, or in addition thereto, by filing of the plat by the owner of the property comprising Hidden Valley Farms Subdivision Property comprising [sic] showing the 50' public roadway by the owner of the property, the owner granted an easement appurtenant to Lot 11, and the other lots, in Hidden Valley Farms Subdivision.

A party may assert that they have a private easement over a roadway if they can prove a conveyance of land makes reference to a map or plat that shows abutting roads. *See Dykes v. City of Houston*, 406 S.W.2d 176, 181 (Tex. 1966); *Chapell Hill Bank v. Smith*, 257 S.W.3d 320, 325 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Here, the petition gave Richard and Mary sufficient notice of Jason and Scopas's private easement claim based on the plat, which shows Public Road 50. Accordingly, after liberally construing Jason and Scopas's original petition, we hold that the petition sufficiently raised a private easement claim.

We next turn to whether the trial court erred in declaring Jason and Scopas did not have a right to use Public Road 50. After reviewing the summary judgment evidence, we hold the trial court erred in granting summary judgment in favor of Richard and Mary and declaring Jason and Scopas did not have a right to use Public Road 50 because Jason and Scopas have a private easement to use Public Road 50 as a matter of law. Here, the deed conveying lot 11 to Jason and Scopas makes reference to the "plat recorded in volume 3 page 62 plat records" known as Hidden Valley Farms and grants "all and singular the rights and appurtenances thereto in otherwise belonging, unto the said grantee, their heirs and assigns forever." The plat contains an express dedication of a fifty foot roadway to the public. The express dedication reads:

> THE OWNER OF THE LAND SHOWN HEREON AND WHOSE NAME IS SUBSCRIBED HERETO ACKNOWLEDGES THAT THIS PLAT WAS MADE FROM AN ACTUAL SURVEY AND DEDICATES TO THE USE OF THE PUBLIC FOREVER ALL ROADS SHOWN HEREON. EASEMENTS ARE

DEDICATED FOR THE PURPOSE OF CONSTRUCTING AND MAINTAINING UTILITIES AND NOT TO THE USE OF THE PUBLIC IN GENERAL.

More pertinently, the plat shows a layout of the lots and abutting roadways, including Public Road 50, in the subdivision. On the plat, the roadway constituting Public Road 50 is labeled as "Public Road 50' R.O.W."

Accordingly, we hold as a matter of law that Jason and Scopas's deed creates a private easement by reference to the plat, which shows abutting roads, including Public Road 50. *See id*. However, because Jason and Scopas did not move for summary judgment on their private easement claim, we may not render judgment that Jason and Scopas's deed creates a private easement as a matter of law. *See State Farm Fire & Casualty Co.*, *v. Griffin*, 888 S.W.2d 150, 158 (Tex. App.—Houston [1st Dist.] 1994, no pet.). But, because the summary judgment evidence has conclusively established that Jason and Scopas have a private easement as a matter of law and no questions of law or fact remain on this issue, we remand the case to the trial court with instructions to declare as a matter of law that Jason and Scopas's deed creates a private easement by reference to the plat. *See id*.; *see also Shank, Irwin, Conant & Williamson v. Durant, Mankoff, Davis, Wolens & Francis*, 748 S.W.2d 494, 500 (Tex. App.—Dallas 1988, no writ); *Browning-Ferris, Inc. v. Johnson*, 644 S.W.2d 123, 128 (Tex. App.—Austin 1982, writ ref'd n.r.e.).

Based on our conclusion that Jason and Scopas have a private easement to use Public Road 50, we need not address any of Jason and Scopas's other easement claims.

### *Public Road 50*

We now address Jason's and Scopas's argument regarding whether Public Road 50 constitutes a public road. Jason and Scopas contend the trial court erred in granting Richard and

Mary's motion for summary judgment and declaring Public Road 50 is not a public road. In four subpoints, Jason and Scopas specifically contend: (1) Richard and Mary's affirmative defense of non-acceptance is not an affirmative defense as a matter of law, or, in the alternative, genuine issues of material fact exist as to whether the public accepted the dedication of Public Road 50; and (2) Richard and Mary failed to establish as a matter of law that Public Road 50 was either statutorily abandoned or abandoned under Texas common law.

## 1. Acceptance

In their motion for summary judgment, Richard and Mary asserted the affirmative defense of non-acceptance. According to Richard and Mary, the public's failure to accept Public Road 50 as a public road made any express dedication of the roadway to the public ineffective.

Jason and Scopas, however, argue that acceptance of a roadway by the public is not required to make an express dedication effective. Therefore, non-acceptance by the public does not act as an affirmative defense to their claim that Public Road 50 is a public road. As a second subpoint, Jason and Scopas argue that should non-acceptance act as an affirmative defense, Richard and Mary failed to establish non-acceptance as a matter of law because genuine issues of material fact exist as to whether the public accepted the dedication of Public Road 50. We will discuss these issues together.

Dedication refers to a landowner's action "of devoting or giving property, for some proper object, and in such manner" that the landowner wants. *Adams v. Rowles*, 149 Tex. 52, 56, 228 S.W.2d 849, 851 (1950); *Scott v. Cannon*, 959 S.W.2d 712, 718 (Tex. App.—Austin 1998, pet. denied). Dedication to the public may occur expressly or by implication. *Adams*, 228 S.W.2d at 851; *Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—San Antonio 2001, no pet.); *McMullen v. King*, 584 S.W.2d 706, 708-09 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd.).

An express dedication occurs if an owner of land makes express reference in his plat description to a roadway not yet opened; this reference operates as an immediate dedication of the roadway to the public. *Id.* "'Generally, an express dedication is accomplished by deed or written document.'" *Stein*, 53 S.W.3d at 42 (quoting *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 837 (Tex. App.—San Antonio 1997, no writ)). Under an express dedication, the purchasers of the lot acquire every easement, privilege, and advantage that the plat represents as belonging to them, and this right "is not the mere right that the purchaser[s] may use [the roadway]," but it is a right that "all persons whatever, as their occasions may require or invite," may use the roadway. *Adams*, 228 S.W.2d at 851. In other words, the sale and conveyance of the land with reference to a roadway implies "a grant or covenant to the purchasers, that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public[.]" *Id*.

Whether dedication occurs expressly or by implication, one element that must be shown is acceptance of the offer to dedicate. *Stein*, 53 S.W.3d at 42 n.2 (listing acceptance of offer as one of four distinct elements to establish dedication); *Linder v. Hill*, 673 S.W.2d 611, 616 (Tex. App.—San Antonio 1984), *aff'd by* 691 S.W.2d 590 (Tex. 1985) (same); *see also Callaghan Ranch, Ltd. v. Killam*, 53 S.W.3d 1, *4 (Tex. App.—San Antonio 2000, pet. denied) (highlighting public use of land constitutes strong evidence of acceptance of a tendered dedication). The acceptance of a roadway by the public may be established by use. *Stein*, 53 S.W.3d at 42; *Callaghan Ranch, Ltd.*, 53 S.W.3d at *4 (explaining public may accept dedication through general and customary use). No specific time period is necessary to establish public use; in fact, a short period of use is sufficient so long as the use continues "for such a period that it

may be inferred that the public desires to accept in perpetuity the offer of use." *Stein*, 53 S.W.3d at 42.

Here, it is undisputed that the roadway was expressly dedicated to the public in a recorded plat filed in March of 1971 by the original owner, Burdick. The plat expressly states that "THE OWNER OF THE LAND SHOWN HEREON . . . DEDICATES TO THE USE OF THE PUBLIC FOREVER ALL ROADS SHOWN HEREON[,]" which included Public Road 50. Jason and Scopas also provided summary judgment evidence that the road had routinely been used by various members of the public, including the owners of the adjacent properties, employees of the brothers' landscaping business, as well as construction crews who worked on Jason and Richard's homes. Such evidence is sufficient to raise a fact issue as to whether the public accepted the roadway as a public road. *See Stein*, 53 S.W.3d at 42; *Callaghan Ranch, Ltd.*, 53 S.W.3d at *4

Accordingly, because Jason and Scopas raised a fact issue as to whether the public accepted the dedication, the trial court erred in granting summary judgment in favor of Richard and Mary on this basis.

## 2. Abandonment

"There are two types of abandonment: statutory and common law." *Rice v. Kuhn*, No. 04-03-00088, 2005 WL 418202, at *2 (Tex. App.—San Antonio Feb. 23, 2005, pet. denied) (mem. op.) (citing *Rutledge v. Staner*, 9 S.W.3d 469, 471 (Tex. App.—Tyler 1999, pet. denied)). In their third and fourth subpoints, Jason and Scopas contend Richard and Mary failed to establish as a matter of law that Public Road 50 was either statutorily abandoned or abandoned under Texas common law. We will separately address each type of abandonment.

a.  Statutory Abandonment

Section 251.057(a) of the Texas Transportation Code sets out the law regarding statutory abandonment.  *See* TEX. TRANSP. CODE ANN. § 251.057(a) (Vernon 2009).  Under section 251.057(a), statutory abandonment occurs when a county road's use "has become so infrequent that one or more adjoining property owners have enclosed the road with a fence continuously for at least 20 years." *Id.*  Texas case law provides little guidance on statutory abandonment.

With regard to the affirmative defense of statutory abandonment, Richard and Mary contend "[a]ny public nature of the right of way by virtue of dedication was lost [on] or about March 2001, the expiration of 20 years following the Koehlers' enclosure of the right of way and roughly two years before their sale to Appellees."  After reviewing the summary judgment evidence, we hold statutory abandonment was not established as a matter of law because the evidence shows only a portion of the roadway was fenced for twenty years.  Here, it is undisputed that the Koehlers owned multiple lots prior to the Brauns.  Specifically, in 1981, the Koehlers owned lots 9, 10, 11, 13, and 14, and the angled portion of Public Road 50 ran alongside and in between these lots.  During the Koehlers' twenty-two year ownership of these lots, the Koehlers enclosed these lots, including the angled portion of Public Road 50 that ran alongside these lots, with a barbed wire fence to prevent their cattle from trespassing on neighboring lands.  It is undisputed these lots as well as this angled portion of Public Road 50 were enclosed for at least twenty years in accordance with the requirements of statutory abandonment. *See* TEX. TRANSP. CODE ANN. § 251.057(a).

However, it was not conclusively established that all of Public Road 50 was enclosed for at least twenty years.  The evidence shows the Koehlers did not own any property adjacent to the straight portion of Public Road 50 until 1989 when they acquired the southern portion of lot 3.

The record contains no evidence suggesting the Koehlers fenced the straight portion of Public Road 50 when they acquired the southern portion of lot 3. Even if we assume the Koehlers did put up fencing when they acquired the southern portion of lot 3, the fence would only have enclosed the straight portion of Public Road 50 since 1989. Therefore, the straight portion of Public Road 50 was not enclosed for the requisite twenty years. In order to declare an entire road statutorily abandoned, the statute and limited case law surrounding statutory abandonment do not suggest the principle can be applied to only a portion of a roadway. Therefore, based on the evidence before us that only a portion of Public Road 50 was enclosed for twenty years, we hold Richard and Mary did not establish statutory abandonment as a matter of law.

b. Common Law Abandonment

Common law abandonment, on the other hand, occurs when a roadway's use for which it was dedicated "'becomes impossible, or so highly improbable as to be practically impossible, or where the object of the use for which the [roadway] is dedicated wholly fails.'" *Rutledge*, 9 S.W.3d at 471. "The purpose of a public road, particularly one of local character, is to provide access to property abutting upon it, as well as serving as a thoroughfare between distant points." *Id*. (citing *Compton v. Thacker*, 474 S.W.2d 570, 574 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e)).

With regard to common law abandonment, Jason and Scopas contend Public Road 50 was dedicated to enable access to the surrounding lots and the purpose for which the roadway was dedicated has not wholly failed. *See Rutledge*, 9 S.W.3d at 471; *Compton*, 474 S.W.2d at 574. Again, we agree with Jason and Scopas. The evidence shows the purpose of the right of way was to provide access to the surrounding tracts. Both the Koehlers as well as the Brauns continually used the roadway in order to access the abutting properties. And although these

properties are not landlocked due to their access to another roadway, the evidence is indicative that Public Road 50 was established in order to provide access to properties abutting it. *See id.* Since the Brauns and their guests continue to use the roadway, we hold Richard and Mary have not shown as a matter of law that the purpose for which the roadway was established has wholly failed. *See id.* Accordingly, Richard and Mary failed to establish as a matter of law that the road was abandoned under common law principles.

### 3. Conclusion

The trial court's declaration that Public Road 50 is not a public road was based on the trial court's conclusion that Richard and Mary established their affirmative defenses of non-acceptance and abandonment as a matter of law. Because we hold Richard and Mary failed to establish either of their affirmative defenses as a matter of law, the trial court erred in declaring Public Road 50 is not a public road.

### *Encroachments*

In their third issue, Jason and Scopas contend the trial court erred in declaring that the gravel drives, planter area, sprinkler head, septic drain field, and the electrical service line were encroachments on Richard and Mary's property that must be removed. Although Jason and Scopas globally assert the trial court erred in declaring these items were encroachments on Richard and Mary's property, Jason and Scopas's argument focuses specifically on the electrical service line and septic drain field. Jason and Scopas contend these items were not encroachments because Richard and Mary consented to the location of the electrical service line and septic drain field at the time of their installation, or, in the alternative, there is no summary judgment evidence that the septic drain field encroaches onto Richard and Mary's property.

Here, the summary judgment evidence shows at least one utility pole and a portion of a septic drain field are located on Richard and Mary's property. In the survey plat, prepared by Ken L. Reininger, a licensed engineer and land surveyor, it appears that the majority of the septic drain system is located on Jason's property while a small corner is located on Richard's lot 10. Additionally, in his affidavit, Richard testified a portion of the septic drain field encroaches on his property. In his affidavit, Jason does not dispute the location of the septic drain field. Instead, Jason testified Richard was fully aware of the location of the components of the septic drain system and participated in the installation.

With regard to the utility poles, the survey does not indicate the location of the utility poles. However, in his affidavit, Richard testified two poles, a guy wire, and overhead and underground electric lines were placed by Jason on Richard's lot. Jason does not dispute these facts, and confirms that at least one utility pole was placed on lot 10. Accordingly, we hold the summary judgment evidence conclusively establishes that at least one utility pole as well as a portion of the septic drain field is located on portions of Richard's lot 10.

A landowner may ask a trial court to declare certain items constitute encroachments and to order the removal of these items when those items extend onto the landowner's property without the landowner's permission. *Allen v. Virginia Hill Water Supply Corp*., 609 S.W.2d 633, 635 (Tex. Civ. App. 1980) (describing encroachments as an improvement on one person's land that extends over that person's property line onto adjoining land without the adjoining landowner's consent).

In this case, whether Richard and Mary consented to the placement of these items at the time of their installation, and therefore whether the items are encroachments, is a fact issue. In his affidavit, Jason testified he and Richard discussed and agreed to the placement of these items

on Richard's property. Jason testified that Richard was present when the electric company's survey crew surveyed the location and placement for the poles, and Richard verbally authorized the placement of a utility pole on lot 10. The purpose of the utility poles was to provide electrical service to Jason's residence. With respect to the septic drain field, Jason testified Richard was fully aware of the location of the components of the system because he assisted in the installation of them. The septic system was installed in order to provide services to Jason's residence. Richard disputes each of these allegations regarding consent.

Accordingly, this evidence raises a fact issue as to whether Richard and Mary consented to the installation of the electrical service line and septic drain field, and therefore, whether the items constitute encroachments. *See Allen*, 609 S.W.2d at 635. Because the summary judgment evidence raises a fact issue as to whether Richard and Mary consented to the location of these items on their property, Richard and Mary did not establish their encroachments claim as a matter of law. *See id.* Therefore, the trial court erred in granting summary judgment in favor of Richard and Mary with respect to their encroachments claim.

### *Recovery for Replacement Cost of Fencing*

In their fourth issue, Jason and Scopas contend the trial court erred in awarding Richard and Mary recovery for the replacement cost of fencing. As mentioned earlier, the original owners of the lots, the Koehlers, had installed fencing to secure cattle they raised on their property. As a result, the angled portion of Public Road 50 that ran alongside the fenced lots was enclosed by this fencing. After Richard acquired these lots, the fencing was removed. Richard and Mary claimed that Jason wrongfully removed the fence, and the trial court awarded Richard and Mary damages for the replacement cost of the fencing.

The summary judgment evidence shows that fact issues exist with regard to whether Richard consented to the removal of the fence, and therefore whether Richard and Mary are entitled to recovery for the replacement cost of fencing. The summary judgment evidence shows the parties dispute who participated in the removal of the fencing. Jason contends both he and Richard removed the fencing, while Richard denies this assertion. Accordingly, because fact issues exist with regard to whether Richard and Mary consented to the removal of the fencing, Richard and Mary did not establish that they were entitled to recovery for the costs of replacing the fence. Therefore, the trial court erred in awarding Richard and Mary damages for the cost of replacement fencing.[2]

### Recovery of Attorney's Fees

In their fifth issue, Jason and Scopas contend the trial court erred in awarding attorney's fees to Richard and Mary. It appears that the trial court awarded Richard and Mary attorney's fees under the Declaratory Judgment Act ("the Act"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009(a) (Vernon 1997) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). While the Act provides that the trial court may use its sound discretion to award a party attorney's fees, the Act qualifies the trial court's discretion as "'subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law.'" *Neeley v. West Orange-Cove Consol. Indep. School Dist.*, 176 S.W.3d 746, 799 (Tex. 2005) (quoting *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex .1998));

---

[2] After reviewing the summary judgment evidence, it appears the trial court awarded Richard and Mary damages for the fencing based on its declaration that Jason and Scopas had no right to access the roadway, and therefore no right to remove the fence. Because fact issues exist regarding whether Richard consented to the removal of the fence, we do not separately address whether the private easement gave Jason the right to remove the fence.

*see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009(a). Because we have concluded that the trial court erred in granting summary judgment in favor of Richard and Mary, we remand the issue of attorney's fees to the trial court for reconsideration as to whether an award of attorney's fees is appropriate. *See Neeley*, 176 S.W.3d at 799.

## CONCLUSION

Based on the foregoing, we reverse the trial court's judgment. We remand the cause to the trial court for further proceedings and with instructions to declare as a matter of law that Jason and Scopas's deed creates a private easement by reference to the plat.

Marialyn Barnard, Justice