**COUNTY OF REAL, Appellant,**

v.

**Ivan D. HAFLEY, Appellee.**

**No. 04–93–00556–CV.**

Court of Appeals of Texas,
San Antonio.

Feb. 9, 1994.

Rehearing Denied March 23, 1994.

Grady B. Jolley, Jolley & Jolley, P.C., Hondo, for appellant.

Ivan D. Hafley, pro se.

Michael C. Boyle, amicus curiae, Matthews & Branscomb, P.C., Eagle Pass.

Before CHAPA, C.J., and BIERY and LOPEZ, JJ.

## OPINION

BIERY, Justice.

The County of Real (County) appeals a summary judgment granted in favor of Ivan D. Hafley. This case arises from a dispute regarding the status of a road in Real County, Texas. The appellee, Hafley, brought this action seeking a declaratory judgment that the road in question was not a public road and seeking a permanent injunction denying the use of the road to the public. The road also crosses the property of William and Patricia Sutton, who joined Hafley in bringing this action originally; the Suttons, however, did not join in Hafley's motion for summary judgment. County answered by way of general denial and also pleaded the affirmative defense of implied dedication. Adrian R. Pitts, Roaring Springs Ranch, Inc., and R.F.F.T., Inc., adjacent land owners, filed Pleas in Intervention. Hafley moved for, and was granted, summary judgment on the issue of the status of the road and on the requested injunctive relief. The Suttons' cause of action and the intervenors' pleas were severed from the cause on appeal and the interlocutory summary judgment in favor of Hafley was made final.[1] County appeals under two points of error. We reverse and remand.

Hafley moved for summary judgment on the ground that County failed to comply with

---

1. A partial summary judgment, which is generally "interlocutory" and not appealable because it does not dispose of all parties and issues, may be reduced to a final judgment by an order of severance. This effectively places the unadjudicated parties and issues in a separate lawsuit. *Chase Manhattan Bank v. Lindsay,* 787 S.W.2d 51, 53 (Tex.1990).

article 6812h of the Texas Civil Statutes. Article 6812h, which became effective on August 31, 1981, defines "dedication" and provides only four methods by which a county with a population of less than 50,000, such as Real County, can acquire a public interest in a private road:

> Section 1. In this Act, "dedication" means the explicit, written communication to the commissioners court of the county in which the land is located of a voluntary grant of the use of a private road for public purposes.
>
> Section 2. (a) A county may not establish, acquire, or receive any public interest in a private road except under the following circumstances: (1) purchase; (2) condemnation; (3) dedication; or (4) final judgment of adverse possession in a court of competent jurisdiction.

TEX.REV.CIV.STAT.ANN. art. 6812h (Vernon Supp.1994). According to Hafley, because County admits it failed to comply with any of the four methods prescribed by the statute for it to acquire a public interest in the otherwise private road, he has established his right to summary judgment.

■ Assuming, without deciding, Hafley, the plaintiff moving for summary judgment, has established each element of his cause of action as a matter of law, *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986), County alleges it has come forward with summary judgment evidence sufficient to raise a fact issue on each element of the affirmative defense of implied dedication. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Specifically, County acknowledges the legislature abolished the common-law doctrine of implied dedication when it enacted article 6812h, but contends the doctrine of implied dedication is available as an affirmative defense if County acquired an implied dedication of the road prior to the effective date of the statute. Hafley agrees, but contends County failed to present competent summary judgment evidence raising a fact issue as to the "intent" element of the implied dedication affirmative defense.

■ The elements of the common-law doctrine of implied dedication are: "(1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) he was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication." *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984). In this case, the only two owners of the property who could have impliedly dedicated the road to the public were H.G. Counts, who owned the property from 1955 to 1972, and Michael J. Orton, Jr., who bought the property from Counts in 1972 and owned it until 1986 (several years after the legislature abolished the doctrine of implied dedication for counties such as Real as of August 31, 1981). The deposition testimony of these men was part of the summary judgment evidence considered by the trial court.

Counts testified the "new road," in litigation here, did not exist when he bought the property in 1955, but there was another road, the so-called "old road," which ran from F.M. 337, along the east side of Camp Wood Creek, until it entered the property to the north, then owned by a man named Jones (now owned by Sutton). He stated there was a gate where the old road entered F.M. 337, but there were no signs at the gate indicating whether the road was private or public. The old road itself was just a trail that was not built up or improved. To Counts knowledge, no one other than himself, Jones and later Ferris, family members and visitors used the old road. When asked whether people who came in visiting Jones or later Ferris had permission to cross his property on the old road, Counts stated: "Well as far as I'm concerned, it was a neighborhood road in there *and the right to go in and visit anybody wasn't restricted.*" (emphasis added). On the other hand, he further testified he did not ever intend to give people other than visitors of Jones, and later Ferris, a right to go across his property and use the old road.

Counts also stated, after he had owned the property for a few months, he decided to build a "new road," located on higher ground, further to the east, so he could better see traffic coming along F.M. 337. Counts testified he then constructed the new road himself, using only his own equipment. Counts

also said he provided the materials for a "bump gate" at the entrance to this new road, and asked J.B. Hutto, a county commissioner who was living on the Jones land as a tenant, to build and install it. Hutto apparently did so, but the gate was not kept locked.

Further, both Counts and Orton testified that the deeds pursuant to which they obtained the property contained a roadway easement "providing ingress and egress to" the land that was at one time owned by Jones and later Ferris.[2] Counts testified that he never intended to dedicate the road to the public and Orton testified similarly. Both testified that, aside from themselves and their families and visitors, as far as they knew only Jones and his successors used the new road, with their permission. Both testified they never asked the County to maintain the road and that, as far as they knew, the County never had maintained the road. However, when asked whether Milburn Verner, the caretaker, "could have requested Real County to maintain the road or maintain the gates," Orton replied "I don't know" and admitted "it's possible."

County proffered the affidavits of four witnesses, including Lilly Hutto Asher, Milburn Woolridge and Adrian Pitts. It appears Pitts purchased the property on the other side of Ferris in 1972 and conveyed it to what is now known as the Roaring Springs Ranch subdivision in September of 1976. According to Pitts, who is President of Roaring Springs Ranch, Inc., the residents of the local area have used the new road to reach F.M. 337, especially when weather conditions or the type of vehicle made the use of the roads in Roaring Springs Ranch subdivision hazardous, since 1976. He also stated he has observed employees of Real County maintaining the road with county equipment since 1972.

Milburn Woolridge, county commissioner since January of 1979, testified he "had conversations with the owners" of the property

concerning maintenance of the road and, further, the County has maintained the road "on an as needed basis" during his tenure as commissioner. Woolridge also said the road was used by the public generally until the gate was locked by Hafley in late 1991 or early 1992.

Lilly Hutto, the widow of J.B. Hutto, testified she was elected to serve the remainder of her husband's unexpired term as county commissioner following his death. She said she served from July 1975 through December 1976. She also stated the new road was not only maintained at the sole expense of the County, but was also constructed by the County in 1956 using county funds. Further, she said the public generally had used the road. Additionally, to each witness' knowledge, no one had ever asked permission, or been denied permission, to use the road.

■ Because Hafley challenges only the first element of implied dedication, we limit our review of the record accordingly. In a trial on the merits, County would bear a heavy burden when proving implied dedication. This is because such a finding results in the appropriation of private property for public use without any compensation to the landowner, which appropriation would otherwise be prohibited under article I, section 17 of the Texas Constitution. TEX. CONST. art. I, § 17. It may be difficult to prove to a Real County jury these landowners gave away their property without compensation. In this summary judgment appeal, however, we are limited to a determination of whether the summary judgment evidence raises a fact issue concerning the acts of landowners Counts and Orton perhaps inducing the belief Counts and Orton intended to dedicate the road to public use. *Zavala County*, 682 S.W.2d at 256. As stated above, the landowners' intent can be inferred from the landowners' acts. *Id.* We hold the following acts raise such fact issues:

(1) *Financing and construction of the new road.* The testimony is conflicting as to

2. Specifically, the deed states "Survey No. 2, GC & SF RY CO., Block E.G. 2, certificate 4980, Abstract 1050, containing 640 acres of land, more or less. SUBJECT HOWEVER TO the following: ... (c) Roadway easement over and

across the North one-half (N½) of Survey One (1), Block Thirteen (13), TWNG RY Co., Original Grantee, providing ingress and egress to land situated North of said Survey; ...."

whether Counts or County built the new road. If Counts allowed County to build and pay for the road, a jury could believe Counts intended for the public to use the road. Conversely, if Counts built and paid for the road, a jury may believe Counts intended for the road to be private.

(2) *Building and installing the bump gate.* Counts' request of his neighbor, the county commissioner, to build and install the bump gate at the entrance of the road may have induced the belief Counts intended for the road to be public. On the other hand, it may be Counts merely asked Hutto as his neighbor, whom Counts anticipated would be using the road, to build and install the bump gate. In that case, the fact Hutto was a county commissioner becomes irrelevant and Counts took no action to induce the belief he intended to dedicate the road to the public.

(3) *Maintenance of the road.* The testimony is conflicting whether Counts and Orton arranged for county maintenance of the road. If they did, this action could induce the belief each intended for the road to be traveled by the public. If not, and if Counts and Orton were not even aware of the maintenance, a jury could conclude no actions were taken by the landowners to induce such a belief.

(4) *Choosing not to lock the gate.* It appears the gate was not locked during the relevant time period. This could induce the belief Counts and Orton intended for the road to be open to public travel. On the other hand, placing the lock on the gate may be an act which could induce the belief the road was not open to the public.

(5) *Continuous use of the road by the public.* The testimony is conflicting as to whether the new road was used only by a few neighborhood residents or by the public generally. It is undisputed, however, that no one had ever asked permission, or been denied permission, by either Counts or Orton to use the road. Although it is also clear Counts and Orton were absentee landowners and rarely available to be asked permission, this could be viewed as evidence each intended the road to be public.

(6) *Easement provision in the deeds.* Accepting a deed with an easement provision allowing "ingress and egress" may induce the belief Counts and Orton intended the road to be public.

■ Hafley argues County does not raise a genuine issue of material fact because both Counts and Orton testified they did not intend to dedicate the road to public use. What the landowner actually intended is not, however, an element of the implied dedication defense. Rather, as stated above, the *acts* of the landowner are examined to determine whether he induced the *belief* that he intended to dedicate the road. *Zavala County,* 682 S.W.2d at 256. Accordingly, we hold the summary judgment evidence raises genuine issues of material fact whether there was an implied dedication of the road. The summary judgment granted in favor of Hafley is reversed; the case is remanded to the trial court for further proceedings.