**Affirmed in Part and Reversed and Remanded in Part and Opinion filed July 28, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00629-CV

---

## HAVEN CHAPEL UNITED METHODIST CHURCH, Appellant

## V.

## WILLIAM MICHAEL LEEBRON, II, E.J. KING, BRAZORIA COUNTY COMMISSIONERS COURT, AND MARLENE MOUCHETTE, Appellees

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 62845-A**

## O P I N I O N

Appellant Haven Chapel United Methodist Church appeals the trial court's judgment granting the appellees' motions for summary judgment and declaring that a platted road or right-of-way exists between the Church's property and that of another property owner. In nine issues, the Church challenges the trial court's jurisdiction and rulings rejecting the Church's claims that the disputed property

was never a road and is owned by the Church. We affirm in part and reverse and remand in part.

FACTUAL AND PROCEDURAL BACKGROUND

Sometime in the 1800s, the town of Columbia (now known as the city of West Columbia and the unincorporated community of East Columbia) was platted in Brazoria County. Our record does not contain an original map or plat filed of record in the County. The map in evidence, titled "Map of Columbia," was compiled by the Brazoria County Abstract Company on behalf of several residents of West Columbia and East Columbia in 1945 and recorded in the County's deed records (the "1945 Map"). The 1945 Map sets out numerous tracts of land, lots, and named roads.

The portion of the 1945 Map relevant here is located in the area now known as East Columbia at Blocks 14 and 15. The property at issue is a 55.5-foot wide strip platted as Milam Street, sometimes spelled "Milum," located between Blocks 14 and 15 (the "Property"). The Property is unbuilt and the County has not accepted it as a county road for maintenance.

The Church alleges that it became the owner of lots 129 and 130 out of Block 15 in 1884. The Church also claims that it owns the Property by title or adverse possession, and that no road has ever run across the Property. On the opposite side of the Property is part of lot 120 and lots 121–124 of Block 14. In 2010, lots 121–124 were purchased by William Leebron, II.

In the spring of 2011, the Church sued Leebron, the Brazoria County Commissioners Court, and E.J. King (then the County Judge), asserting numerous claims and seeking declaratory and injunctive relief, as well as a determination that the Church holds title to the Property. Among other things, the Church alleged that

2

Leebron committed trespass and nuisance related to his use of the Property. The County answered and asserted a counterclaim for declaratory judgment.[1] Leebron was never served with process, however, and he died on July 6, 2013.

In 2011, the trial court denied the Church's request for a temporary injunction. The Church appealed the interlocutory order, but this Court granted the appellees' motion to dismiss because the notice of appeal was not filed timely.

The Church did not actively prosecute the case against the defendants for several years. On January 12, 2015, after the trial court notified the Church that the case was going to be dismissed, the Church agreed to a docket control order, which provided that all discovery would be completed by March 6, 2015. The deadline for dispositive motions was set for March 31, 2015. The Church also filed a "Suggestion of Death and Request for Issuance of Scire Facias" regarding

---

[1] Leebron died during the pendency of this suit and the Church named Marlene Mouchette as a substitute defendant. We construe the Church's live pleading to assert claims against defendants Marlene Mouchette, Brazoria County, the County Judge of Brazoria County in his official capacity, and the Brazoria County Commissioners Court. In the County's pleadings, the County asserted that the Church had inappropriately named the County Judge and the Brazoria County Commissioners Court as defendants and that all references in the pleadings to the "County" included the County and the inappropriately named defendants, citing Texas Rule of Civil Procedure 33. Rule 33 provides: "Suits by or against a county or incorporated city, town or village shall be in its corporate name." Tex. R. Civ. P. 33. Although a county is not made a party merely by naming the county judge and commissioners court, *see Scott v. Graham*, 292 S.W.2d 324, 327 (Tex. 1956), when the county judge and the county commissioners are sued in their official capacities, courts have held that the suit is one against the county. *See, e.g.*, *Davis v. Comal Cty. Comm'rs Court*, No. 03-11-00414-CV, 2012 WL 2989220, at *1 n.3 (Tex. App.—Austin July 13, 2012, no pet.) (mem. op.); *Ware v. Miller*, 82 S.W.3d 795, 800 (Tex. App.—Amarillo 2002, pet. denied); *Randall Cty. v. Todd*, 542 S.W.2d 236, 238 (Tex. Civ. App.—Amarillo 1976, no writ); *Cobb v. H.C. Burt & Co.*, 241 S.W. 185, 190 (Tex. App.—Beaumont 1922, no writ). Here, the Church's original and amended petitions do not list the County as a named defendant, but all of its petitions recite that the Church's claims "are against Brazoria County and [the] Brazoria County Commissioner's Court." The Church variously refers to the County, the county judge, or the commissioners court, but it makes no claims against the county judge or the commissioners in their individual capacity. We conclude that all references in the County's pleadings and the trial court's rulings to the County or to "Brazoria County" include Brazoria County, the County Judge of Brazoria County in his official capacity, and the Brazoria County Commissioners Court.

Leebron. No contact information for any administrator, executor, or heir was provided, however, and the scire facias was never issued.

On February 19, 2015, the Church filed an amended petition "substituting" Marlene Mouchette "pursuant to Rule 151 of the Texas Rules of Civil Procedure . . . as she is the property owner of the land which is the object of this suit." In the amended petition, the Church added allegations that the defendants also were in violation of the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb–2000bb-4, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc–2000cc-5, (the "federal statutes").

On March 6, 2015, the County filed traditional and no-evidence summary judgment motions on all of the Church's claims. As part of its traditional summary judgment motion, the County requested a declaratory judgment that the Property was an expressly dedicated public right-of-way that had not been abandoned or adversely possessed, and that the Church had no ownership rights in the right-of-way. The County also filed a Rule 91a motion to dismiss as baseless the Church's claims under the federal statutes.

In response, the Church filed its own hybrid no-evidence and traditional motion for summary judgment as well as responses to Brazoria County's motions and a Second Amended Petition.[2] The County filed a response to the Church's motion for summary judgment and lodged objections to the Church's evidence.

The trial court granted all of the County's dispositive motions on March 30, 2015, except for the County's request for declaratory judgment, which the trial court granted by separate order on April 9, 2015. The trial court also sustained all

---

[2] The Second Amended Petition specifically identified the Church as the Plaintiff and included a statement that "the style of a case does not change, even when parties are substituted." The Church also elaborated on its allegations that the County violated the federal statutes.

4

but one of the County's objections to the Church's evidence and denied the Church's summary judgment motion on April 9, 2015.[3]

On May 7, 2015, Mouchette moved for summary judgment on the Church's claims for trespass and nuisance against her as the legal substitute for Leebron. Mouchette alleged that there was a fatal defect of parties because she was not the administrator, executor, or heir of Leebron and therefore was an improper party under Rule 152 of the Texas Rules of Civil Procedure.[4] Mouchette also moved for summary judgment on the Church's claims because Leebron was never served with citation and any alleged trespass or nuisance committed on the Property occurred more than two years before the addition of Mouchette as a defendant. On June 17, 2015, the trial court granted Mouchette's motion for summary judgment.

### ISSUES AND ANALYSIS

On appeal, the Church raises nine issues, contending that the trial court erred or abused its discretion by: (1) making road determinations when it lacked jurisdiction to do so; (2) finding that a road had been established; (3) granting declaratory judgment to the County because it raised no affirmative grounds for relief; (4) granting summary judgment on the basis that a public road or right-of-way had been dedicated; (5) accepting incompetent summary judgment evidence from the County; (6) striking the Church's claims pertaining to religious discrimination pursuant to Rule 91a; (7) granting a judgment that is void for vagueness; (8) granting summary judgment without requiring the County to produce discovery; and (9) granting summary judgment to Mouchette and in

---

[3] On appeal, the Church does not challenge the trial court's denial of its summary judgment motion or the trial court's rulings excluding its evidence.

[4] Although the Church's amended petition sought to substitute Mouchette pursuant to Rule 151, that rule addresses the issuance of a scire facias in the event of the death of a plaintiff. Rule 152 addresses the procedure in the event of the death of a defendant.

essence bifurcating the case.

We first address the Church's jurisdictional complaint. Concluding that the trial court had jurisdiction over the dispute, we then address, in turn, the Church's challenges to the trial court's grant of the County's no-evidence summary judgment motion, the County's declaratory judgment, and Mouchette's summary judgment motion.

## Standards of Review

We review the trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing either a no-evidence or traditional summary judgment motion, we must take as true all evidence favorable to the non-movant and draw every reasonable inference and resolve all doubts in favor of the non-movant. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23–24 (Tex. 2000) (per curiam); *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the non-movant's claim or defense. Tex. R. Civ. P. 166a(i). The non-movant is required to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id.*; *Timpte Indus.,* 286 S.W.3d at 310. Generally, we first review the no-evidence summary judgment motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

The party moving for a traditional summary judgment has the burden to show that no material fact issue exists and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Willrich*, 28 S.W.3d at 23. To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

Under the Uniform Declaratory Judgments Act, "a person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations hereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). Declaratory judgments are reviewed under the same standards as other judgments. *Id.* § 37.010. Because the County obtained declaratory relief based on its traditional summary judgment motion, we review the propriety of the declaratory judgment under the same standards that we apply in reviewing a summary judgment. *City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

7

## I.     The Trial Court's Jurisdiction

In its first issue, the Church contends that the trial court lacks jurisdiction over any road determinations because "current statutes are inapplicable to the case." The Church raises this issue for the first time on appeal. Subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject matter jurisdiction is never presumed and cannot be waived. *Id.* at 443–44.

In the trial court, the Church cited Texas Transportation Code sections 251.051 and 251.057 in support of its arguments that only the Commissioners Court may declare the existence of a county road, and if a road did exist, it was abandoned. On appeal, however, the Church apparently takes the position that these statutes do not apply because they were enacted in 1995, after the Church acquired its property in 1884, and are not retroactive. Further, the Church argues that neither the Commissioners Court nor the district court has jurisdiction to determine whether a road exists.

The Church's briefing of this issue intermingles its arguments before the trial court and its contradictory arguments on appeal, making it difficult to discern the legal foundation for its jurisdictional argument. However, we understand the Church to be arguing that both the Commissioners Court and the trial court "lack authority to determine what happens regarding the streets in the town of East Columbia" because the Church purchased its property prior to the Commissioners Court's adoption of the roads in East Columbia into the county system in 1967, and the city government of East Columbia was abandoned prior to a determination of what would become of streets that were platted but not built.

In support of this contention, the Church primarily relies on *Lundberg v. City of Raymondville*, 4 S.W.2d 127 (Tex. Civ. App.—San Antonio 1928, writ

8

ref'd), and *Norwood v. Gonzalez Cty.*, 14 S.W. 1057 (Tex. 1891). However, these cases merely demonstrate that a county may not exercise coextensive jurisdiction over roads within the jurisdiction of an existing or anticipated city government. *See Lundberg*, 4 S.W.2d at 130 (holding that commissioners court had no authority to interfere with proposed streets platted on a map of land for a potential town or city); *Norwood*, 14 S.W. at 1057–58 (stating that a county lacks jurisdiction to assume authority over a city's streets and control them as public roads if the city still exists and maintains jurisdiction over the streets).

In this case, the Church takes the position that the town of East Columbia, where the Property is located, ceased to exist. *Norwood* reflects that, contrary to the Church's argument, a county may assume control over the streets after a city ceases to exist or cedes jurisdiction over a street "in order to prevent chaos and disorder when for some reason municipal government has temporarily lapsed or been abandoned . . . ." *Lundberg*, 4 S.W.2d at 130. More to the point, the Church has not presented, and this Court has not located, any statutory or other authority depriving a district court of jurisdiction to determine whether a dedicated right-of-way exists or whether a party may adversely possess a property claimed to be a dedicated right-of-way. The County sought declaratory relief as to whether the Property is an expressly dedicated public right-of-way, and this court has recognized that "Texas courts often adjudicate declaratory judgment actions to determine the dedicated status of a disputed road." *See Shelton v. Kalbow*, 14-14-00710-CV, ___ S.W.3d ___, 2016 WL 1128479, at *4 (Tex. App.—Houston [14th Dist.] Mar. 22, 2016, pet. filed) (rejecting argument that trial court lacked jurisdiction over disputed road because the county had exclusive jurisdiction to determine or clarify status of disputed road). We therefore overrule the Church's first issue.

## II.    The County's No-Evidence Summary Judgment Motion

In its no-evidence summary judgment motion, the County argued that after an adequate time for discovery, the Church had no evidence of one or more of the elements of each of its claims. The County argues that its evidence showed that the Property was a public road or right-of-way that could not be adversely possessed and had not been abandoned. Additionally, the County contended that the Church had no evidence to support the elements of its claims for adverse possession of the Property, violations of the federal statutes, trespass, nuisance, a taking, and injunctive relief. The County's traditional summary judgment motion sought summary judgment on the same claims. The violations of the federal statutes were also the subject of the County's motion to dismiss under Rule 91a.

On appeal, the Church contends that the no-evidence summary judgment motion should not have been granted because the County was abusing the discovery process. The Church does not otherwise address the substance of the no-evidence motion or point to any evidence to rebut the no-evidence motion. In the trial court, the Church's response to the County's no-evidence motion included arguments similar to those urged on appeal.

The Church initially frames its issue as a complaint that a party may not move for a no-evidence summary judgment when the non-movant's failure to obtain evidence is due to the movant's refusal to tender discovery. Although the Church does not specifically articulate an argument that the trial court erred or abused its discretion in some way, we understand the crux of the Church's complaint to be that the trial court abused its discretion by ruling on the County's motion when the Church was not provided an adequate time for discovery. We review a trial court's determination of whether an adequate time for discovery has passed under an abuse of discretion standard. *Madison v. Williamson*, 241 S.W.3d

145, 155 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Pape v. Guadalupe-Blanco River Auth.*, 48 S.W.3d 908, 912 (Tex. App.—Austin 2001, pet. denied).

As noted above, in January 2015, the Church agreed to a docket control order providing for the "completion of all discovery" on March 6, 2015. Roughly two weeks before this deadline, on February 18, 2015, the Church served discovery on the County. The Church acknowledges that the County "answered same in a timely fashion," but asserts that the County either refused to answer or provided incomplete answers on the ground that the discovery deadline had passed before the answers were due.

The Church argues that whether a party served with discovery before the deadline is required to answer the discovery when it is not due until after the deadline has passed is a gray area. According to the Church, the trial court's refusal to require the County to answer the Church's discovery or to extend the discovery period to allow the Church to obtain the requested discovery left the Church without evidence to defeat the County's summary judgment motion. In support of its argument, the Church cites several rules of civil procedure relating to discovery, in particular Rule 190.4(b)(2),[5] and argues that the County should have sought a protective order rather than object to each item of discovery. The Church also faults the trial court for "impos[ing] restrictive time frames which made completing this case an impossibility."

The record shows that the Church filed its lawsuit in April 2011, meaning the Church had almost four years to obtain evidence to support its claims. Moreover, the Church agreed to the trial court's docket control order and was

---

[5] Rule 190.4(b)(2) provides that a discovery control plan under Level 3 must include "a discovery period during which either all discovery must be conducted or all discovery requests must be sent, for the entire case or an appropriate phase of it." Tex. R. Civ. P. 190.4. We note that the Church's pleadings have consistently identified this lawsuit as a Level 1 case.

aware of the impending deadlines imposed. Yet, the Church waited until two weeks before the court-ordered discovery deadline to serve its discovery requests on the County. Further, a few days after the County filed its no-evidence motion, the Church filed its own hybrid traditional and no-evidence motion, indicating that the Church believed that an adequate time for discovery had elapsed. *See* Tex. R. Civ. P. 166a(i).

To the extent that the Church is complaining that the trial court should not have ruled on the County's motion because of the discovery dispute, the Church did not support its response to the County's no-evidence motion with an affidavit explaining the need for further discovery or file a verified motion for continuance. *See Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1994) ("When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance."). This court has held that the failure to take either of these steps waives error. *See Kaldis v. Aurora Loan Servs.*, 424 S.W.3d 729, 736 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Nor did the Church move to compel discovery or seek a hearing on the County's objections. *See McKinney v. Nat'l Union Fire Ins. Co.,* 772 S.W.2d 72, 75 (Tex.1989) ("Because the party requesting discovery is in the best position to evaluate its need for information and sometimes recognizes the validity of an objection to a discovery request, the orderly administration of justice will be better served by placing responsibility for obtaining a hearing on discovery matters on the party requesting discovery.").

Given the length of time the case had been on file, the Church's agreement to the docket control order, and its failure to diligently conduct discovery under the rules, we cannot say that the trial court abused its discretion in concluding that an

12

adequate time for discovery had elapsed before the County filed its no-evidence summary judgment motion. *See Madison*, 241 S.W.3d at 155–56 (holding that trial court did not abuse its discretion in determining adequate time for discovery had passed when, among other things, lawsuit had been pending for over one year and non-movant filed her own no-evidence summary judgment motion); *Pape*, 48 S.W.3d at 912–14 (holding that trial court did not abuse its discretion in denying appellant's motion to modify discovery schedule and motion for continuance, which was not supported by affidavit, when circumstances showed that appellant failed to diligently use discovery rules).

The Church does not otherwise challenge the trial court's grant of the no-evidence summary judgment motion or direct this court to any evidence to overcome the County's challenges to the elements of each of the Church's claims; therefore, we affirm the trial court's grant of the County's no-evidence summary judgment motion.[6] *See Leffler v. JP Morgan Chase Bank, N.A.*, 290 S.W.3d 384, 386 (Tex. App.—El Paso 2009, no pet.) ("When a ground upon which summary judgment may have been rendered, whether properly or improperly, is not challenged, the judgment must be affirmed."); *Lowe v. Townview Watersong, L.L.C.*, 155 S.W.3d 445, 447 (Tex. App.—Dallas 2004, no pet.) ("Because summary judgment may have been granted on the unchallenged no-evidence

_____

[6] Although in some of the Church's other issues, such as its second and fourth issues, the Church challenges discrete findings or conclusions by the trial court, the Church does not specify which motion or motions are the subject of these issues. We have carefully reviewed these issues and considered the arguments and evidence upon which the Church relies in support of each. Liberally construing the issues as responsive to some of the substantive arguments raised in the County's no-evidence summary judgment motion, we nevertheless conclude that the Church has failed to present more than a scintilla of evidence to raise a fact issue on each of the elements of the claims challenged in the motion. We also note that, although in its own summary judgment motion the Church attached evidence in support of the Church's claims, the trial court sustained the County's objections to the evidence, as well as many of the statements in the Church's motion, and the Church does not challenge those rulings on appeal.

grounds, we must affirm the trial court's summary judgment.").

Because the County's no-evidence motion effectively challenged all of the Church's claims against it, we need not consider the Church's issues challenging the trial court's grant of the County's traditional summary judgment motion or the Rule 91a motion to dismiss addressing the same claims. *See Ridgway*, 135 S.W.3d at 600 (explaining that if the non-movant fails to produce more than a scintilla of evidence to support each challenged element of the no-evidence summary judgment motion, then there is no need to analyze whether the movant satisfied its burden under the traditional summary judgment on the same grounds).

Nevertheless, to the extent that the County sought affirmative relief, the no-evidence summary judgment motion was not a proper method by which to obtain such relief. In the no-evidence motion, the County asserted that the Church "has no evidence [that] property dedicated to the public can be adversely possessed." Specifically, the County claimed that the Church could not legally obtain the Property by adverse possession because it was a right-of-way dedicated to the public. *See* Tex. Civ. Prac. & Rem. Code § 16.030(b) ("A person may not acquire through adverse possession any right or title to real property dedicated to public use."); *Ellis v. Jansing*, 620 S.W.2d 569, 570 (Tex. 1981) (stating that predecessor to § 16.030(b) was intended to "protect the rights of those persons to whom the property was dedicated from any person claiming by adverse possession"). The County supported its argument with various deeds to the Property and the 1945 Map—the same evidence it submitted in support of its request for declaratory relief in its traditional motion for summary judgment.

The County's claim that the Property was a right-of-way dedicated to the public, and as such could not be adversely possessed, is either a claim for affirmative relief or a defense on which the County bore the burden of proof. *See*

14

*Cty. of Real v. Hafley*, 873 S.W.2d 725, 728 (Tex. App.—San Antonio 1994, writ denied) (noting that the county, as the party seeking to prove an implied dedication of private property to the public, "would bear a heavy burden" at trial). The law is well-established that "a party may never properly move for no-evidence summary judgment to prevail on its own claim or affirmative defense for which it bears the burden of proof." *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 679 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Therefore, the County is not entitled to prevail on this claim by way of its no-evidence summary judgment motion, and we will instead address the merits of the claim in our discussion of the County's request for declaratory judgment.

We overrule the Church's eighth issue and do not reach its second, fourth, fifth, and sixth issues to the extent that they challenge the trial court's grant of those portions of the County's traditional summary judgment motion directed to the Church's claims or the County's motion to dismiss under Rule 91a.

## III.    The County's Declaratory Judgment

The County also sought declaratory relief as part of its traditional motion for summary judgment. The trial court granted the County's request, declaring that (1) the Property was "[a] platted right-of-way located in the Town of Columbia . . . and is a portion of 'Milam Street,' . . . (hereinafter referred to as 'Subject ROW')"; (2) "[t]he Subject ROW has not been abandoned pursuant to law"; (3) "[t]he Subject ROW has not and cannot be adversely possessed by [the Church]"; and (4) "[the Church] has no ownership interest in the Subject ROW."

On appeal, the Church's second, third, fourth, fifth, and seventh issues either directly attack the declaratory judgment granted or may be liberally construed to attack the basis for the judgment. In its third issue, the Church contends that the trial court abused its discretion in granting declaratory judgment

to the County because the County "raised no affirmative grounds for relief." In its second and fourth issues, the Church argues that the trial court abused its discretion in granting summary judgment on the basis that a road had been established on the Property and that a dedicated road had been granted. In its fifth and seventh issues, the Church contends that the trial court abused its discretion in accepting incompetent summary judgment evidence from the County and in granting a judgment that is "void for vagueness." We consider these issues to the extent that they are directed to the portion of the County's summary judgment motion in which it sought declaratory relief.

## A.     The County Sought Affirmative Relief

In its third issue, the Church argues that the County's request for declaratory relief is not a true claim for affirmative relief because it merely restates defenses to the Church's claims in the form of a declaratory judgment action. *See BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) ("The Declaratory Judgments Act is not available to settle disputes already pending before a court.") (internal citations and quotations omitted). The Church lists the claims it has asserted against the County and maintains that because in its claim for declaratory relief the County seeks only to negate the Church's claims, the County is not entitled to the declaratory relief granted.

In *Millard*, the court explained that a defendant may seek a declaratory judgment if the substance of its counterclaim is "more than the mere denial" of the plaintiff's claims and the defendant seeks to recover benefits, compensation, or relief if the plaintiff abandoned its claims or failed to establish them. *Id.* at 842. In the present case, the County sought, on behalf of the public, a declaratory judgment as to whether the Property was a right-of-way that had been irrevocably dedicated to the public. This determination involved rights and obligations greater

16

than, and independent of, the Church's right to recover on its claims. *See id.* We overrule the Church's third issue.

**B.     The Church Waived Its Challenge to the County's Summary Judgment Evidence**

In its fifth issue, the Church contends that the trial court abused its discretion by admitting the 1945 Map into evidence because it is incompetent evidence that is insufficient to support a judgment, even if admitted without objection. The Church argues that the 1945 map is flawed in several ways, noting that on its face it shows that it is not an original map, has no dedicatory language, and does not reference metes and bounds descriptions of the lots within. Additionally, the Church complains that the County has provided no information concerning the grant of the land to the founder of East Columbia, either by the State of Texas or the Mexican government. Therefore, the Church argues, the map cannot establish, as a matter of law, that the streets identified on the map were dedicated to the public.

The Church does not explain exactly why the map is incompetent other than to make a catchall argument that, under *City of Keller*, the map must be disregarded because it lacks context, is circumstantial, has conflicting inferences, and there is contrary evidence that is conclusive and cannot be disregarded. *See* 168 S.W.3d at 812–19. Nor does the Church point out where in the record it objected to the 1945 Map or its objections were overruled. *See* Tex. R. App. P. 33.1(a) (to preserve error for appeal, a party is required to make a timely request, objection, objection, or motion to the trial court and obtain a ruling). Because the Church has failed to articulate a coherent argument supported by substantive analysis to support its contention that the 1945 Map is incompetent evidence that is inadmissible and must be disregarded, we hold that the Church has waived this complaint by inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Affordable Motor*

17

*Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519–20 (Tex. App.—Dallas 2011, pet. denied) (holding appellant's complaint that summary judgment evidence was "inadmissible or incompetent" was inadequately briefed and presented nothing for review when appellant failed to provide any analysis of its objections or cite any rule of evidence or other authority that would apply to its objections).  We overrule the Church's fifth issue.

### C.      The County Failed to Conclusively Prove an Offer and Acceptance of the Property as a Public Right-of-Way

In the trial court, the County sought a declaratory judgment that the Property was a public right-of-way and that, as such, it could not be adversely possessed by the Church. *See* Tex. Civ. Prac. & Rem. Code § 16.030(b); *Ellis*, 620 S.W.2d at 570. Because the County sought declaratory relief as part of its traditional summary judgment motion, it was required to conclusively demonstrate that it was entitled to the declaratory relief it requested. *See City of Galveston*, 196 S.W.3d at 221.

In its fourth issue, the Church challenges the trial court's finding that a public road or right-of-way had been dedicated and accepted. The Church argues that the 1945 Map relied on by the County is a replica of the original map of the townsite that was filed in the County deed records in 1945—long after the Church had been deeded its land—and the County failed to demonstrate that the original grantor or settlor of East Columbia ever made a dedication of the streets to the public or that a dedication was accepted. Further, the Church points out that the County's own witness acknowledged that the County did not accept the roads in East Columbia into its system until 1967, and he admitted that the County has not deemed the Property to be a county road.

18

The County responds that the 1945 Map demonstrates an express dedication of the Property. The County argues that the 1945 Map "sets out the street dedications" from the original map of the town of Columbia and shows Milam Street extending through the Property. According to the County, this "dedication" identifies the width of all streets and their locations, and identifies Milam Street as being 55.56 feet in width. Further, the County asserts that the "dedication" includes notations about changes made to specific streets in 1853, 1854, and 1858.

### 1. The applicable law on dedication of land to the public

Dedication is the act of appropriating private land to the public for any general or public use. *Hatton v. Grigar*, 66 S.W.3d 545, 554 (Tex. App.—Houston [14th Dist.] 2002, no pet.). "Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public." *Id.* A dedication may be either express or implied. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978); *Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—San Antonio 2001, no pet.); *Gutierrez v. Cty. of Zapata*, 951 S.W.2d 831, 837 (Tex. App.—San Antonio 1997, no writ). An express dedication is generally accomplished by deed or other written document. *Stein*, 53 S.W.3d at 42; *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ). However, merely recording a map or plat which shows streets or roadways, without more, does not constitute a dedication, as a matter of law, of such streets as public roadways. *Miller v. Elliott*, 94 S.W.3d 38, 45 (Tex. App.—Tyler 2002, pet. denied); *Broussard*, 792 S.W.2d at 537; *Aransas Cty. v. Reif*, 532 S.W.2d 131, 134 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.).

When the map or plat contains no express dedicatory language that the streets are to be devoted to public use, one claiming that a street shown on the plat has been dedicated for use by the public must show some act by the owner of the

land that he clearly intended to so dedicate the land in question, and that there has been an acceptance thereof by the public, or by the local authorities. *See Gutierrez*, 951 S.W.2d at 838; *see also Las Vegas Pecan & Cattle Co., Inc. v. Zavala Cty.*, 682 S.W.2d 254, 256 (Tex. 1984) (listing four essential elements of an implied dedication: (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) he was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication). Whether a roadway has been acquired by implied dedication is a question of fact. *Lindner v. Hill*, 691 S.W.2d 590, 591 (Tex. 1985); *Lee v. Uvalde Cty.*, 616 S.W.2d 367, 372 (Tex. Civ. App.—Tyler 1981, no writ).

### 2. No evidence to prove an express dedication

Despite the County's repeated characterization of the 1945 Map as a "dedication," the map contains no dedicatory language indicating that the initial owner of the land intended to donate the streets to the public. Further, the 1945 Map could not purport to reflect an express dedication to the public from the original owner, because it is merely a compilation based on the recollections of nine residents of West Columbia and East Columbia in 1945. Although the record does not contain any evidence of the origin of the town of Columbia, it is apparent that the original townsite was platted decades before the 1945 Map was compiled. *See Gutierrez*, 951 S.W.2d at 839 (stating that a map or plat not attributed to any act of the landowner cannot constitute a valid dedication).

As noted above, the 1945 Map in the record is a certified copy from the deed records of the Brazoria County Clerk's office. The 1945 Map is titled "Map of Columbia" and reflects that it was "Compiled by The Brazoria County Abstract Company." At the bottom of the map is a "Note" stating as follows:

The portion of above town lying West of Fourteenth Street is known as West Columbia.

　　　The above map is a copy of an old map, in the possession of one of the early settlers of Columbia, and we have every reason to believe that it is correct.

The lower left-hand corner of the map contains "Notes transcribed from Clark's map of Columbia" describing the length and width of some of the named streets, as well as changes to some of the streets over time. The map also reflects that it was filed by nine residents of East and West Columbia in June 1945. The notarized statement of the residents reflects the following:

　　　WHEREAS no map of the towns of East and West Columbia has ever been recorded in Brazoria County, although copies of such map are said to have been filed for record in very early days, and

　　　WHEREAS sales of lots and blocks in said town have sometimes referred to the "Clark" map of Columbia, and sometimes to the Generally Recognized Maps in use", or words to this effect, and it is considered important that a map of the said towns be not only filed but be recorded in the proper records of said county:

　　　NOW THEREFORE, we the undersigned property owners of property in West Columbia, formerly known as Columbia, and East Columbia, formerly known as Marion, do hereby join in identifying the attached map as being, to the best of our knowledge and belief, a substantially true and correct copy of the original or Clark's map of said townsite embracing both towns, in accordance with which the property in said town has been from time to time conveyed.

　　　We join in this statement for the purpose of making this map eligible for record as a true map of the said towns of East and West Columbia.

　　　Witness our hands, this 29th day of June 1945.

Thus, the 1945 Map on its face is not an original and does not contain any express indication of the original landowner's intent to dedicate the streets identified on the map to the public. Indeed, no original owner of the land is

21

identified in the record. Because the 1945 Map contains no indication that the owner of the land expressly intended to dedicate the Property to the public, the County was required to show an implied dedication. *See Broussard*, 792 S.W.2d at 537; *Reif*, 532 S.W.2d at 134.

### 3. No or insufficient evidence to prove an implied dedication

Although the County does not argue in the alternative that an implied dedication was made, it nevertheless maintains that a "complete and irrevocable dedication" to the public is created when, as in this case, lots are conveyed that reference a plat or dedicated streets, and therefore "no formal acceptance of the dedication . . . [is] necessary." *See McLennan Cty. v. Taylor*, 96 S.W.2d 997, 998–99 (Tex. Civ. App.—Waco 1936, writ dism'd); *Coombs v. City of Houston*, 35 S.W.2d 1066, 1068–69 (Tex. Civ. App.—Galveston 1930, no writ); *see also Chappell Hill Bank v. Smith*, 257 S.W.3d 320, 329 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The County points out that the Church's own deed conveys property by lots; all of the deeds of the chain of title to the Church's property reference lots; and one even references Milam Street. The latter deed, dated November 14, 1873, references Lot 129 in Block 15 "fronting on Milam Street according to the plan of said Town [of East Columbia] . . . ." Further, the County points out, Milam Street is shown on the 1945 Map as extending across the Property.

But, the County has provided no evidence that the 1945 Map is a representation of the same map or plat that would have been referenced in those deeds. Obviously, any references to platted lots or streets in those deeds could not be references to the 1945 Map because all of the deeds predate the 1945 Map. Further, the 1945 Map reflects that the residents of West Columbia and East Columbia who offered the map for filing indicated that sales of lots and block in

22

their towns had previously referred to a "Clark" map or other "Generally Recognized Maps in use" as a reason why it was "considered important" that a map of the towns be recorded in the county records. Thus, even the County's own evidence casts doubt on whether the 1945 Map is a representation of the same map or plat referenced in the earlier deeds.

Even assuming the 1945 Map was an accurate representation of the map or plat referenced in the deeds of the Church and its predecessors, the County's cited authorities do not support its position. In both *Taylor* and *Coombs*, the plats in evidence contained express designations of streets to the public, and the deeds conveying the properties by lots referenced those same plats. *See Taylor*, 96 S.W.2d at 997–98; *Coombs*, 35 S.W.2d at 1067–68. Because it was conclusively proven that there had been a dedication by the owner of the land to the public, the issue in those cases was whether the dedicated streets had to be formally accepted by the municipality, not whether there had been a dedication in the first place. *See Taylor*, 96 S.W.2d at 998–99; *Coombs*, 35 S.W.2d at 1068–69; *see also Broussard*, 792 S.W.2d at 538 (distinguishing cases cited in support of claim that plat and deeds mentioning plat constituted a valid dedication when cited cases involved an identified owner who dedicated the land before filing the plat).

Moreover, the County's authorities undercut its position that a dedicated road or right-of-way is automatic and irrevocable as between the grantor and the public. For example, *Taylor* makes clear that "while the dedication was irrevocable as to J.W. Taylor and his successors in title, McLennan [C]ounty, as the organized representative of the public, was not compelled to accept the dedication as made by J.W. Taylor, and it could either refuse to accept same or abandon the property dedicated, if it saw fit to do so." *Taylor*, 96 S.W.2d at 999. Similarly, in *Chappell Hill Bank*, this Court held that an alley platted as part of a city could be abandoned

by the county when, as in the present case, no active city government existed. *See* 257 S.W.3d at 329–30.[7] In both *Chappell Hill Bank* and *Taylor*, the courts held that the county had abandoned the property at issue and consequently the property could not be opened for public use. *See Chappell Hill Bank*, 257 S.W.3d at 331; *Taylor*, 96 S.W.2d at 999–1000.

We hold that, on this record, the County has failed to conclusively prove that the original grantor expressly or impliedly intended to dedicate the Property to the public. *See Broussard*, 792 S.W.2d at 537–38 ("Here, the Jableckis did not prove who owned the land when the plat was made, or that the owner then, in 1894, intended to dedicate the road to the public. Therefore, the Jableckis did not conclusively prove a dedication.") (internal citations omitted); *Reif*, 532 S.W.2d at 135 ("In this appeal, there is no evidence that the owner of the land, at the time the original map of the Lamar Townsite was filed, dedicated the streets shown on the map to use by the public.").

### 4. No or insufficient evidence of public acceptance of any dedication

Even assuming the County presented sufficient evidence of a dedication, the Church argues that the County has failed to prove that the public accepted the dedication. The Church points out that 1945 Map was filed long before 1967, when the County Engineer, Matthew Hanks, testified by affidavit that the County first accepted the roads in East Columbia into its system. Hanks also testified that the

---

[7] In this case, the County relies heavily on its position that the Property is "a dedicated, platted road/public right-of-way" and not a county road, arguing that the Church's arguments must fail because the Church misunderstands the difference between the two. However, it is undisputed that East Columbia does not have a functioning city government, and in such a circumstance, *Chappell Hill* has rejected the same argument the County makes in this case. *See* 257 S.W.3d at 329–30 (holding that county had "de jure control" over streets and alleys of a non-functioning municipality and therefore alley could be abandoned).

Property had not yet been accepted into the county road maintenance system.

The Church's reliance on Hanks's testimony is misplaced, however, because it does not matter whether a county expressly accepts an offer of dedication or the public accepts the dedication on the county's behalf. *See Stein*, 53 S.W.3d at 42 n.2. As explained in *Viscardi*, acceptance by the public may be either express or implied. *See* 576 S.W.2d at 19. "If an intention to dedicate is otherwise shown, . . . the public use of the land is sufficient to constitute a completed dedication." *Id.*; *Stein*, 53 S.W.3d at 42. The use need not be for any specific length of time, and a short period of use generally is sufficient as long as the use continues for such a period that it may be inferred that the public desires to accept in perpetuity the offer of use. *Miller*, 94 S.W.3d at 45; *Stein*, 53 S.W.3d at 42.

The County does not argue that the Property has been impliedly accepted by the public based on public use or point to any evidence of acceptance other than the 1945 Map and deeds. Reviewing the evidence submitted by the County in support of its traditional summary judgment motion, we conclude that the evidence does not conclusively demonstrate an implied acceptance based on public use.

Hanks testified that some of the lots in Blocks 14 and 15 are accessible only through the Property, but he also explained that the Property has yet not been accepted into the County's maintenance system because it remained "unbuilt." Further, Hanks did not affirmatively state that the Property is or was used by any member of the public at any time. The County also submitted the affidavit of a representative of the owner of lot 127 in Block 15, who averred that he had used the Property "many times" to get to lot 127, and that he has "cleared the trees and brush" on the Property to access the lot. The affiant does not state, however, what length of time he has used the Property or that anyone else has ever used the Property as a right-of-way or road. This evidence does not conclusively prove

acceptance of a dedication by public use.

Even if we were to conclude that the 1945 Map conclusively demonstrates that that the original owner dedicated the Property to the public, the County has failed to demonstrate as a matter of law that there was an offer and acceptance of this dedication by the public. *See Mitchell v. Ballard*, 420 S.W.3d 122, 133 (Tex. App.—Texarkana 2012, no pet.) (holding legally insufficient evidence supported finding that public accepted dedication of road when there was little evidence of public use and county commissioner testified that he had no desire to maintain the road); *Miller*, 94 S.W.3d at 45–46 (holding no evidence supported acceptance of dedication to the public when affiant testified only that previous owner of the property allowed access to the roads but made "no mention of what length of time, if any, he, or any other member of the public, actually made use of the roads" and did not establish whether roads actually existed); *Ford v. Moren*, 592 S.W.2d 385, 392 (Tex. App.—Texarkana 1979, writ ref'd n.r.e.) (holding that even if jury could have concluded there was an intent to dedicate streets and alleys to the public, there was no evidence to support an acceptance when city never attempted to claim the streets and had no intention of putting in any streets on the property). Consequently, the trial court erred by granting summary judgment as to the County's request for declaratory judgment.

We therefore sustain the Church's fourth issue, reverse the trial court's order granting summary judgment as to the County's request for declaratory judgment, and remand for further proceedings. Because of our resolution of this issue, it is unnecessary to reach the Church's second issue challenging the evidence that a road had been established.

## IV. Mouchette's Summary Judgment

Lastly, in its ninth issue, the Church contends that the trial court erred in

"bifurcating this cause and granting summary judgment to Mouchette." Within this issue, the Church also argues that Mouchette was properly substituted for Leebron under Rule 152 of the Texas Rules of Civil Procedure and that summary judgment was improperly granted for several reasons.

The Church first contends that because the grant of summary judgment and declaratory relief to the County "is so inextricably intertwined with the rights of Mouchette to enter the premises" of the Church, the matters cannot be handled separately, citing *Discovery Operating, Inc. v. BP America Production Co.*, 311 S.W.3d 140, 165 (Tex. App.—Eastland 2010, pet. denied). In *Discovery Operating*, the court of appeals held that the trial court erred by granting BP America Production summary judgment on all of Discovery Operating's claims of negligence per se based on violations of specified statutes, rules, and orders, because the ruling prevented Discovery Operating from developing and submitting to the jury its remaining claims asserting a private cause of action for negligence per se based on the same statutes, rules, and orders. *See id.* at 159–64. The Church argues that the trial court similarly erred by handling this case "in a piecemeal fashion, which in essence constitutes bifurcating the matter," and leaving the Church with no claim. The Church does not otherwise elaborate on this argument.

We conclude that *Discovery Operating* is distinguishable from this case. We already have held that the trial court did not err by granting the County's no-evidence summary judgment motion on all of the Church's claims because the Church failed to present evidence raising a genuine issue of material fact on each of the challenged elements of its claims. Moreover, nothing in *Discovery Operating* suggests that a trial court necessarily commits harmful error simply by granting successive summary judgment motions in favor of different movants on the claims alleged against each of them.

27

The Church next contends that Mouchette was a proper party to be substituted for Leebron because Mouchette is now the owner of lots 121–124, having "inherited or been transferred the property" by the executor of Leebron's estate. The Church cites Texas Rules of Civil Procedure 150 and 152 as support for its argument that Mouchette has been sued in the proper capacity and as a proper party.[8]

Rule 150, titled "Death of Party," provides that "no suit shall abate because of the death of any party thereto before the verdict or decision of the court is rendered, but such suit may proceed to judgment as hereinafter provided." Tex. R. Civ. P. 150. Rule 152, titled "Death of Defendant," provides:

> Where the defendant shall die, upon the suggestion of death being entered of record in open court, or upon petition of the plaintiff, the clerk shall issue a scire facias[9] for the administrator or executor or heir requiring him to appear and defend the suit and upon the return of such service, the suit shall proceed against such administrator or executor or heir.

Tex. R. Civ. P. 152. Thus, under Rule 152, claims against a defendant may be prosecuted against the executor, administrator, or heir after service of scire facias on that party. *See Casillas v. Cano*, 79 S.W.3d 587, 591 (Tex. App.—Corpus Christi 2002, no pet.).

As noted above, the Church filed suit against Leebron and the County in 2011, but Leebron was not served with the lawsuit and filed no answer before his

---

[8] The Church also asserts in a cursory fashion that Mouchette, as the owner of the lots adjoining the Property, is a necessary party to the suit under Texas Rule of Civil Procedure 39, but does not support this argument with any analysis or citation to relevant authorities; therefore, this argument is waived. *See* Tex. R. App. P. 38.1(i).

[9] A scire facias does not begin a new action, but is "a process in the nature of an ordinary citation to an action previously instituted" and "it is not required that the substituted defendant file another answer to the plaintiff's petition when the decedent has previously filed an answer to the cause." *Clark v. Turner*, 505 S.W.2d 941, 945 (Tex. Civ. App.—Amarillo 1974, no writ).

death in 2013. After the Church attempted to substitute Mouchette for Leebron in 2015, Mouchette answered and filed a verified denial alleging a defect of parties. Mouchette later moved for summary judgment on the grounds that she was not liable in the capacity in which she was sued and that the statute of limitations had run on the Church's claims. In a supporting affidavit, Mouchette averred that she was never named and never acted as the administrator or executor of Leebron's estate, and she expressly denied that she was an heir of Leebron. Mouchette also averred that she acquired lots 121–124 from the independent administratrix of Leebron's estate on or about December 9, 2013.

On appeal, the Church cites to *Hermann v. Higgins Oil & Fuel Co.* to support its contention that Mouchette may be substituted as a proper party under Rule 152. *See* 260 S.W. 1094 (Tex. Civ. App.—Galveston 1924, writ ref'd). In *Hermann*, the plaintiff sued the defendant for money damages, but the plaintiff died during the pendency of the case. *Id.* at 1095. Several years later, the testamentary trustees of the decedent's estate sought to substitute themselves as plaintiffs after the decedent's will had been probated and the initial trustees had ceased to act as executors. *See id.*

On appeal, the *Hermann* court acknowledged that under the then-existing rule providing for issuance of scire facias upon the death of a plaintiff, the trustees were not technically administrators, executors, or heirs of the decedent. *See id.* at 1099. Nevertheless, the court construed the rule to include others who "bear the same relation to the estate of the deceased." *Id.* In holding that the trustees were entitled to prosecute the suit as plaintiffs, the court noted that the trustees received their appointment under the terms of the decedent's will, were made the custodians of the decedent's entire estate, were solely entrusted with its title, management, and administration, and as a practical matter acted as executors. *Id.* Further, the

court noted that there was no other person authorized to prosecute the suit, and if the trustees were unable to do so, the suit would have to be abated and the cause of action would be "lost to the beneficiary of the will." *Id.*; *see Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 390 n.2 (Tex. 1993) (citing *Hermann* for proposition that "[s]cire facias not only abrogates the common-law rule that death abates suit, but also provides for substitution of any person or persons succeeding to the rights of the original party, whether executor, administrator, heir, or *person holding the same practical relation*.") (emphasis added).

The Church does not point to any evidence that Mouchette, like the trustees in *Hermann*, received the bulk of Leebron's estate, acted as an executor for all practical purposes, or was the only person that would otherwise be authorized to defend the suit. The Church's own evidence, filed in response to Mouchette's summary judgment motion, merely shows that lots 121–124 were conveyed to Mouchette by a special warranty deed executed by the independent administratrix of Leebron's estate on December 31, 2013. This evidence, without more, is not sufficient to make Mouchette the equivalent of an "executor, administrator, heir, or person holding the same practical relation" for purposes of Rule 152. *See McMurrey*, 858 S.W.2d at 390 n.2. The trial court did not err by impliedly concluding that Mouchette was not a proper party to be substituted for Leebron.

Because the Church did not allege any claims against Mouchette individually in either its pleadings or its response to Mouchette's summary judgment motion, it is unnecessary to address Mouchette's alternate ground for affirmance based on the statute of limitations. We overrule the Church's ninth issue.

## CONCLUSION

We overrule the Church's first, third, fifth, eighth, and ninth issues, and do not reach its second, sixth, and seventh issues. Consequently, we affirm the trial court's orders granting the County's no-evidence summary judgment motion and Marlene Mouchette's summary judgment motion. However, we sustain the Church's fourth issue and hold that the trial court erred in granting summary judgment as to the County's request for declaratory judgment in its April 9, 2015 order. We therefore reverse the declaratory judgment and remand for further proceedings consistent with this opinion.


/s/    Ken Wise
       Justice


Panel consists of Chief Justice Frost and Justices Boyce and Wise.